## Hollin v. Commonwealth.

(Decided April 17, 1914.)

### Appeal from Clark Circuit Court.

1. Criminal Law—Aider and Abettor—What Indictment Should Charge.—In order to convict one of aiding and abetting another in a crime, it is necessary either to jointly charge the principal with him in the indictment if the principal be known, or, if he be unknown that fact should appear, and the facts of aiding and abetting should be sufficiently set forth.

2. Criminal Law—Aider and Abettor—When Instruction Authorizing Conviction Is Erroneous.—Where an indictment charges the defendant only as the principal in the crime, an instruction authorizing his conviction as an aider and abettor, is erroneous.

J. M. STEVENSON, F. H. HAGGARD and C. T. SPENCER for appellant.

JAMES GARNETT, Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant, Charles Hollin, was indicted for the murder of Louis Brandenburg, and appeals from a verdict and judgment convicting him of voluntary manslaughter.

Briefly stated, the facts in connection with the homicide are as follows:

On Saturday, September 27, 1913, Hollin and Ben White, both being young men about 21 years of age, went from White's farm to the city of Winchester, where they spent the greater portion of the night drinking and carousing. From Winchester they proceeded to the home of Shelby White, near Indian Fields, where they remained until Sunday morning. On Sunday morning they left Shelby White's riding in a no-top buggy, for Ben White's farm, about ten miles distant.

Whitehall Church is located on the road upon which they were traveling to Ben White's, and on that Sunday an all day meeting was in progress. When Ben White and Hollin arrived at the church, White, finding some of his friends there, decided to remain and take dinner with them; and Hollin being in the same buggy with White, remained with him. They attended the morning services; took dinner with White's friends, and early in the afternoon they departed on their journey to Ben White's home.

The deceased, Louis Brandenburg, and his wife were also at the Whitehall Church. Brandenburg was a construction boss, engaged in the building of the railroad between Winchester and Irvine. He had been in Clark County only a short time, and was a stranger to both White and Hollin, who did not see Brandenburg until after they had left the church and had started home.

White and Hollin were under the influence of liquor while at the church, to such an extent that some of the witnesses described their condition by saying they were leading each other about the premises. Hollin also says that White ate something that made him sick.

Hollin assisted White into his buggy, and after they had gone a short distance, Hollin fell out of the buggy. He explained this by saying that the horse became scared and made a sudden turn, which threw him out of the buggy, bruising and cutting his head and face. While Hollin was in the road, Brandenburg and his wife drove up in a no-top buggy drawn by a mule. As Brandenburg passed Hollin, he asked him if he was hurt, and Hollin answered that he was not hurt very much.

Shortly thereafter, White and Hollin overtook Brandenburg. They were driving very fast, and one of them was hanging out of the buggy while the other was driving the horse in a run. In passing Brandenburg they struck his buggy and frightened his mule to such an extent that Brandenburg got out of the buggy and went to the mule's head to quiet him. After White and Hollin had gone a short distance beyond Brandenburg, Hollin's hat fell off or blew off. White and Hollin stopped their horse and Hollin went back down the road for his hat. Brandenburg had not seen the hat, and when he met Hollin going back for it, Brandenburg asked him why he came back; whereupon Hollin replied that he came to get his hat. Brandenburg then called Hollin's attention to the fact that he and White had run into Brandenburg's

buggy, and Hollin replied that he did not mean to do it. Hollin claims that Brandenburg used some rough language to him on this occasion.

White and Hollin proceeded on the road in advance of Brandenburg until they reached the house of Johnson, where they stopped. White remained in the buggy while Hollin went into Johnson's house for the purpose of washing the blood from his face. While they were at Johnson's' Brandenburg passed them and proceeded on his journey up the road; but almost immediately thereafter Hollin returned from the house and got into the buggy with White and followed Brandenburg, driving very fast. They soon overtook Brandenburg and his wife. Mrs. Brandenburg says that as Hollin and White came up behind them she heard the noise of the buggy and turned to look back; that she saw Hollin and White in the rig, and that Hollin had a pistol in his hand, and drawn upon Brandenburg; that Brandenburg also had a pistol, but that she did not see him draw it, and did not see him have it pointed at White and Hollin. She says Hollin first fired at Brandenburg; that immediately thereafter a fusilade of shots came from the buggy in which Hollin and White were riding, and that Brandenburg returned the fire. Brandenburg was shot three time and fell from the buggy into the road. And as Hollin and White drove away, and while Brandenburg was lying in the road, and raising himself on his arms, Hollin and White fired another shot striking him near the eye. Brandenburg died almost immediately. White was shot through the body and died the following day.

The only other eye witness of the tragedy was Hollin, who testified that when he and White came upon Brandenburg the last time, Brandenburg had stopped his buggy on the side of the road, and turning on the seat and facing backwards, Brandenburg drew his pistol on White and fired immediately, striking White in the abdomen; and that immediately White drew his pistol and began firing at Brandenburg, Hollin joining in it.

The testimony of Hollin substantially agrees with that of Mrs. Brandenburg in every material detail of the case, except, perhaps, upon two points. She says Brandenburg did not use the rough language attributed to him by the appellant when he came back in the road to get his hat, while Hollin claims he did use such language, and, secondly, she says appellant fired the first shot, while

Hollin claims that Brandenburg fired first, and first drew his pistol.

A reversal is asked upon the ground that the court erred in giving instructions 1 and 2, the second instruction being the converse of the first, which reads as follows:

"If the jury believe from the evidence beyond a reasonable doubt that in Clark County and before the finding of the indictment, the defendant, Charles Hollin, at a time when it not reasonably appeared to him to be necessary as explained in the 2nd instruction, wilfully shot and killed Louis Brandenburg, or was present wilfully aiding or abetting Ben White in wilfully shooting and killing said Brandenburg, the jury should find the defendant guilty of murder, if the jury believe from the evidence beyond a reasonable doubt that such shooting was done with malice aforethought, and with intent to kill said Brandenburg, or guilty of voluntary manslaughter, if the same was done in sudden affray or in sudden heat and passion without previous malice."

The indictment reads as follows:

"The grand jury of Clark County in the name and by the authority of the Commonwealth of Kentucky accuse Chas. Hollin of the crime of murder, committed as follows, viz:

"That said Chas. Hollin, on the 2nd day of October, 1913, in the county aforesaid did unlawfully, wilfully, feloniously and with malice aforethought kill and murder Louis Brandenburg by shooting him with a pistol, against the peace and dignity of the Commonwealth of Kentucky."

It will be seen that the indictment was against Hollin alone, and did not charge that he was an aider or abettor; or that he was a principal and that some other person was aiding and abetting him; or that he aided and abetted in connection with another person in the killing of Brandenburg.

Appellant contends, that by the terms of this indictment, he was called upon to defend himself against the charge of murder committed by himself alone, and that the court erred in instructing the jury to find him guilty if he was present, wilfully aiding and abetting Ben White in killing Brandenburg.

Appellant relies upon Mulligan v. Commonwealth, 84 Ky., 229, in support of his contention. In that case, Mulligan was indicted alone for rape, and the trial court

instructed the jury that he was guilty if he aided and abetted others in detaining the woman against her will. In sustaining Mulligan's contention that the trial court erred in the instruction given, and reversing that ruling, this court said:

"The object of the indictment is to make known to the accused with what particular crime he is charged, and that the Commonwealth will attempt to prove it as charged. So, to indict both the principal and aider and abettor as principals, they are notified that the Commonwealth can and will attempt to prove, in order to make out their crime, that one did the principal act and the other aided and abetted, and may prepare their defense accordingly.

"Or if the Commonwealth does not choose to indict the principal in the first degree, or for any reason can not do so, but wishes to indict the aider, and will set forth in the indictment the name of the principal, together with his acts or participation in the crime, then it can be said that defendant is given a statement of the acts constituting the offense charged against him. On the other hand, to indict him as the only perpetrator of the crime, and then on the trial be permitted to prove that he was not guilty of the crime as charged—the actual perpetrator of it—but that some one else was guilty, not named in the indictment, and thus secure a conviction, would certainly violate the rule."

In concluding the opinion upon this point, the court further said:

"We conclude, therefore, first, that the Commonwealth may, if it chooses, indict both principal and aider and abettor jointly as principals, and secure a conviction against both without violating the rule of the code, supra, because they are then furnished with a statement of the facts constituting their crime; or, second, the aider and abettor may be indicted alone; but in that case he ought to be furnished with a statement of the acts constituting the crime. This can only be done by setting out in the indictment the acts of the principal actor.

"By this course the Commonwealth can not be wronged, and the defendant can not be taken unawares or by surprise, because the Commonwealth has informed him by a full statement of the facts of which he is charged."

In Evans v. Commonwealth, 11 Ky. L. R., 573, 12 S. W., 768, Evans was jointly indicted with two other per-

sons upon the charge of house burning. This was done under the first rule laid down in the Mulligan case, and in affirming the conviction, the court said:

"The indictment charges the accused with the burning. It does not speak of aiding or abetting. If, however, the torch was applied by a co-defendant of the accused, and he was then present aiding and abetting, he was under our law a principal and the indictment therefore authorized such an instruction."

Likewise, in Benge v. Commonwealth, 92 Ky., 1, Benge, and Hampton and others were jointly indicted for murder, Hampton being charged as principal and Benge and the other defendants as aiders and abettors. The court instructed the jury that they could find Benge guilty as the principal, notwithstanding he was indicted as an aider and abettor only; and Benge complained of this instruction, upon the ground that he having been indicted as aider and abettor only, could not be convicted as the acutal perpetrator of the crime. The court, however, declined to take Benge's view of the case, and held that inasmuch as there was only one crime charged in the indictment, the separate parts performed by each defendant constituted, in legal contemplation, the joint act of all; and that although the aider and abettor's share in the crime was a dependent part, he was, in law, a principal and criminally responsible for the act of the principal as well as for his own act.

It will be noticed, however, that the indictment was a joint indictment against the principal and the aiders and abettors, and necessarily showed upon its face the name of the principals and the crime charged, thus bringing it within the rule laid down in the Mulligan case.

Again, in Reed v. Commonwealth, 125 Ky., 128, Day, Patrick and Reed were jointly indicted for murder, Day being charged as principal, and Patrick and Reed as aiders and abettors. The court quoted with approval from the opinions in the Benge case, *supra,* and Evans v. Commonwealth, above quoted. And, after reviewing those and other cases, the opinion pointed out the distinction between the rulings in those cases and the rule announced in the Mulligan case, as follows:

"The opinion in the case of Mulligan v. Commonwealth, 84 Ky., 229, 8 Ky. Law Rep., 211, 1 S. W., 417, does not conflict with any conclusion expressed in the authorities *supra.* Mulligan was indicted alone for the

crime of detaining a woman against her will, with the intent to have carnal knowledge of her. The evidence conduced to prove that the crime was committed by three persons, and more strongly tended to show that the appellant was only an aider and abettor, in view of which this court held that, in order to convict one as an aider and abettor in committing the crime of rape, the principal must be indicted jointly with him, or, if he be indicted alone, the indictment must disclose the name of the principal and give a description of his acts. The opinion in Mulligan v. Commonwealth was also written by Judge Bennett, and in Benge v. Commonwealth, *supra,* it is referred to and distinguished from that case. In the case at bar, as in the Benge case, the person charged as principal, as well as the aider and abettor, was indicted, and his alleged acts set forth in the indictment, which acts are in law also the acts of the aider and abettor.''

In Taylor v. Commonwealth, 28 Ky. L. R., 823, 90 S. W., 581, John and Ed Taylor and James Garfield Smith were jointly indicted as principals for the murder of William Moore. An instruction upon the subject of Taylor's aiding and abetting in the murder of Moore was given, although the indictment failed to name the persons whom the proof showed the accused had aided and abetted. In condemning that instruction, the court said:

''By failing to name the person or persons supposed to have been aided and abetted, it failed to inform the defendant with what he was charged. In order to convict one of aiding and abetting another with a crime, it is necessary either to charge the principal with him in the indictment or, if this be not known, then the name of the principal should be stated, if known, or, if unknown, that fact should appear, and the facts of aiding and abetting sufficiently set forth.''

In Steeley v. Commonwealth, 129 Ky., 524, the appellant and her son Granville Steeley were jointly indicted for the murder of Snyder. Mrs. Steeley contended that the jury should have been peremptorily instructed to find her not guilty, upon the ground that the proof showed that the killing was done by her son Granville. The court, however, overruled this contention, and held it was without merit, because, she having been indicted as a principal, and the evidence showing that she may

have been guilty as an aider and abettor, she might have been convicted under the indictment which charged her as a principal. The opinion relied upon the cases of Evans v. Commonwealth, and Reed v. Commonwealth, *supra*, saying that it had been expressly decided that although one is indicted as a principal, he may be convicted on the showing that he was committing, counseling, aiding, advising, or assisting the real perpetrator thereof.

In none of these cases, however, except in the Mulligan case, was there presented the precise question we have before us, where the indictment charges the defendant alone with the crime. But the reason for the rule laid down in the Mulligan case, and in the other cases above quoted, where the parties were either jointly indicted as principals, or as aiders and abettors, applies with equal, if not greater force in the case at bar, where the defendant was alone indicted. He was called to answer the charge of murder; there was no intimation given by the indictment that he might be called upon to defend the charge of having been the aider and abettor of some other, or perhaps unknown person, in committing the murder.

The precise question before us was, however, presented and decided in Terhune v. Commonwealth, 144 Ky., 370, which has not been cited by counsel upon either side. In that case, Terhune was indicted for robbery, and the evidence was conflicting as to whether Terhune or Tompkins committed the crime. The court instructed the jury to find Terhune guilty if he committed the robbery, or was present and aided and assisted Tompkins in the robbery. After quoting with approval from Commonwealth v. Carter, 94 Ky., 528; Taylor v. Commonwealth, Mulligan v. Commonwealth, Benge v. Commonwealth, and Reed v. Commonwealth, *supra,* the court said:

"The Reed case reviews the cases and points out the distinction between those cases wherein the aider and abettor is jointly indicted with the principal, and where he is indicted alone for the crime. In the last class of cases, which includes the case at bar, he cannot be convicted of aiding and abetting the commission of the crime."

It will thus be seen that the question now presented for decision has been squarely decided in Mulligan v.

Commonwealth and in Terhune v. Commonwealth, *supra;* and, in both cases contrary to the ruling of the circuit court.

Judgment reversed and cause remanded for further proceedings.