## Sebree, Jr. v. Commonwealth.

(Decided October 19, 1923.)

### Appeal from Kenton Circuit Court.

1.  Indictment and Information—Indictment for Statutory Rape Not Duplicitous Because Charging Assault.—An indictment under Ky. Stats., section 1155, charging that accused did unlawfully and feloniously make an assault upon prosecutrix, a female under the age of 16 years, and did then and there unlawfully and feloniously carnally know, etc., held not duplicitous.

2.  Indictment and Information—Duplicitous Indictment Sufficient when Defendant was Able to Know what was Intended.—If an indictment under Ky. Stats., section 1155, was duplicitous because containing allegations as to assault in addition to unlawful carnal knowledge of an infant under 16, accused was not misled, but was enabled to know what was intended by the pleader, which was sufficient to sustain the indictment under Criminal Code of Practice, section 122, subsection 2.

3.  Rape—Evidence Sufficient to Sustain Conviction of Statutory Offense.—In a prosecution for statutory rape under Ky. Stats., section 1155, evidence held sufficient to sustain a conviction.

4.  Criminal Law—Evidence of Venue Held Sufficient.—In a prosecution for statutory rape, under Ky. Stats., section 1155, evidence held sufficient as to venue.

5.  Criminal Law—Slight Evidence of Venue Sufficient.—Since venue does not affect the issue of guilt or innocence, slight evidence will be sufficient to sustain venue, especially in view of Ky. Stats., section 1146, stating where prosecution is to be had in case of doubt as to where offense was committed.

6.  Criminal Law—Confessions Admissible Unless Obtained in Manner Forbidden.—Unless a confession was obtained in the manner

forbidden in Ky. Stats, section 1649b-1, it is competent evidence against the accused.

7. Criminal Law—Erroneous Instruction as to Punishment Not Prejudicial in View of Verdict.—If court erred in instructing the jury that punishment should be not less than 10 years and not more than 20, instead of charging that punishment should be not less than 5 years nor more than 20 years, it did not prejudice the accused, where the jury returned a verdict assessing punishment at 16 years in the penitentiary, and, under Criminal Code of Practice, section 340, conviction cannot be reversed.

8. Criminal Law—Consideration of Remarks of Attorney as Comment on Failure of Defendant to Testify Includes Question of Prejudice.—On complaint of remarks of Commonwealth's attorney as comment on failure of defendant to testify in violation of Ky. Stats., section 1645, the determinative facts are whether they could be construed as a comment on the failure to testify, and, if so, whether under all the facts and circumstances they were so prejudicial as to authorize a reversal under Criminal Code of Practice, section 340.

9. Criminal Law—Remarks of Counsel as to Defendant's Faliure to Testify Not Prejudicial.—Commonwealth's attorney did not commit reversible error under Ky. Stats., section 1645, by remarking to the jury, after rehearsing proof introduced by the Commonwealth, that no evidence had been introduced by the defense at all, where the court admonished the jury not to consider the statement and defendant's guilt was proven by his uncontradicted confessions.

JOHN B. O'NEAL for appellant.

THOS. B. McGREGOR, Attorney General, and CHAS. W. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Thomas Sebree, Jr., a young man about 24 years of age, was indicted, tried and convicted in the Kenton circuit court of the felony charge denounced in section 1155 of the statutes, the female victim being Zelma Clemons, who was between 14 and 15 years of age. At the time of the alleged commission of the offense the prescribed punishment was confinement in the penitentiary for not less than ten nor more than twenty years, but by chapter 17, Acts 1922, page 65, the legislature amended the section so as to grade the punishment according to the age of the female. By subsection 2 of the amendment it was enacted that where she was between twelve and sixteen years of age the punishment should be confinement in the penitentiary not less than five nor

more than twenty years. That amendment became effective before defendant's trial under the indictment, and the court did not submit in its instruction the minimum punishment of five years contained in the amendment, but submitted the minimum punishment of ten years as contained in the statute before the taking effect of the amendment, and the punishment fixed by the verdict was confinement in the penitentiary for sixteen years.

In his motion for a new trial defendant relied on numerous grounds, but the court overruled it and he has appealed. His counsel urge five reasons why in his opinion the judgment should be reversed, which are: (1), that the indictment is duplicitous, and the court erred in overruling the demurrer filed to it; (2), that there was a failure of proof on the venue of the offense; (3), incompetent evidence introduced by the Commonwealth over defendant's objection; (4), error of the court in failing to instruct the jury under the amendment to the section of the statute under which he was indicted, and (5), improper argument of the Commonwealth's attorney, each of which we will discuss and dispose of as briefly as possible in the order named.

1. The accusatory part of the indictment properly names the offense in the language of the statute. In the descriptive part the averments are: "The said Thomas Sebree, Junior, in the county and state aforesaid, and before the finding of this indictment, he being a male person, did unlawfully and feloniously make an assault in and upon one Zelma Clemons, a female infant under the age of sixteen years, and did then and there unlawfully and feloniously carnally know and have sexual intercourse with the said Zelma Clemons." It is insisted that the language charges the two offenses of unlawfully and feloniously assaulting the female victim, and the one denounced by the section of the statutes; but, we are unable to agree with this contention. At common law a necessary element of the crime of rape was and is that the forbidden act should be done forcibly and against the will or consent of the female, but if she was under ten years of age there was a conclusive presumption that the act was done with force and against her will or consent. In other words, she was considered incapable of giving consent when below that age and that the act was, therefore, forcibly done. The statute only raises the common law

age of consent from ten years to sixteen years, and in some cases changes the punishment. Frierson v. Commonwealth, 175 Ky. 684, and Perkins v. Commonwealth, 124 S. W. (Ky.) 794. While, therefore, it is unnecessary to aver in an indictment under the statute that the act was done unlawfully, or forcibly, or in any other assaulting manner, or without the will or consent of the female, yet if the allegation is made and it charges no element not found in the statute but only one which the law conclusively presumes, it will be regarded only as surplusage.

In the Frierson case, *supra,* the indictment was drawn under the same section of the statute under which defendant was indicted, except the female victim in that prosecution was an idiot, and the exact reverse objection was made there that is made here, *i. e.*, it was complained by defendant's counsel that the indictment failed to contain the language which is objected to in this case, and in disposing of it the opinion said: ''The indictment, in the instant case, charges that character of rape which at the common law was accomplished by the nominal consent of the female and without violence or actual force by the perpetrator, and which, from the facts, the law conclusively presumes force on the part of the ravisher an absence of consent of the victim. Hence, it would be idle in such an indictment to charge that the offense was committed forcibly and without the consent of the infant, as both averments would be only surplusage.'' That opinion disposes of objection (1), but, if not so, we are confident that defendant was not misled by the averment complained of and that from its language he was enabled to know what was intended by the pleader, which was sufficient to conform the indictment to the requirements of subsection 2 of section 122 of the Criminal Code.

2. For a proper understanding and disposition of this ground it becomes necessary to make a brief statement of the facts. Defendant was the teacher of the public school at Bracht schoolhouse near Bracht station in Kenton county, Ky., in the latter of which Zelma Clemons lived with her parents and her brothers and sisters, some younger and some older than she. During the school year of 1920-1921 and up to April 8, 1922, and during the school year of 1921-1922, she attended the public school taught by defendant. Some time about the latter end of 1921 defendant began to associate with her

and to pay her what might be termed "courtship atten-
tion." He would sometimes walk with her after dismis-
sal of the school from the schoolhouse to her home, and
about the first of 1922 began to regularly visit her at her
home twice or more a week, the greater number of which
were at night and generally on Wednesday and Sunday
evenings. Frequently they would be together alone in
the parlor of Mr. Clemons' residence. Sometimes de-
fendant and Zelma would take drives alone in the day-
time, but it is not shown to what places they went. The
residence of the defendant, that of Mr. Clemons, and the
schoolhouse, were all located in Kenton county. About
the time when the offense was possibly committed, ac-
cording to the proof, a few trips were made in an auto-
mobile to the towns of Crittenden in Grant county, and
Walton in Boone county, to picture shows therein, but it
is proven that on most, if not all, of them a sister or
brother of Zelma, or perhaps both, would go along. With
the exception of those trips, there is no testimony even
tending to show that the offense was, or may have been,
committed in any other county than Kenton. The girl
became pregnant, and on the night of April 8, 1922, she
left home with the defendant in an automobile, returning
near twelve o'clock, and remained in bed the greater por-
tion of the next day, and after that till her death. Her
mother was ignorant of her condition, and within a day
or so found about a three or four months' old fetus in her
room, and it developed that she and defendant on the
night of April 8 had gone to Covington for the purpose
of having an abortion performed. He confessed to the
sheriff his participation in procuring the abortion and
told the name of the physician to whom they went and
gave the street and number of his office. The girl lingered
until the 24th day of May following, when she died from
the conclusively proven effects of the criminal abortion.
The defendant confessed the act of intercourse, but
stated that it was with the girl's consent, which under the
statutes constitutes no defense. He did not testify in
the case, nor did he introduce any witnesses in his behalf.
From the foregoing brief statement of the Common-
wealth's proof, together with other incriminating circum-
stances testified to by some of the witnesses, it is perfectly
manifest that the evidence was sufficient, not only to sub-
mit the case to the jury but to sustain the verdict of con-
viction, which indeed is not disputed by learned counsel

for defendant. He strenuously contends, however, that there was not sufficient proof to sustain the venue.

While it is necessary to prove the venue of the offense as laid in the indictment, yet, since it does not affect the issue of guilt or innocence, this court and others have said that "slight evidence will be sufficient to sustain the venue, and slight circumstances from which the jury might infer the place where the crime was committed, are held to be sufficient." Stubblefield v. Comth., 197 Ky. Ky. 218, and other Kentucky cases cited therein. See also 16 Corpus Juris, 767-70; 24 Cyc. 494; Sandefur v. Comth., 143 Ky. 655; Newton v. Comth., 158 Ky. 4, and the Frierson case, *supra*. The latter case and the Sandefur case involved the exact question now under consideration in a trial of an indictment found under the *same* section of the statute. In each of them there was a proven confession of the sexual act, but it did not include the necessary venue, and we held that, under the proven facts (such as opportunities for the commission of the offense within the county with but little, if any, opportunities for its commission elsewhere), the jury had the right to infer that the act for which the conviction was had occurred within the county. In this case, as we have seen, by far the greater number of occassions furnishing opportunities for the violation of the statute were at places within Kenton county with but few, if any, opportunities for its commission (within four months prior to the abortion) at a place without the boundaries of that county, and they, as we have seen, were mostly when some other person or persons were present. Under the instructions of the court the jury had to believe beyond a reasonable doubt that the offense was committed in Kenton county. They found that it was, and we are convinced that the evidence and the inferences to be drawn therefrom were sufficient to authorize that finding, it not being necessary that all doubts upon the question should be removed.

Moreover, section 1146 of the statutes says: "When it is a matter of doubt, in the opinion of the court, in which of two or more counties the offense was committed, the court of either in which the indictment is found shall have jurisdiction of the offense." The legislature in enacting that section intended to accomplish some purpose, and, unless it was intended to apply to a case like

this, in order to prevent a confessed criminal escaping just punishment, we are unable to discover its purpose. It evidently means that where the proof is such as to create a doubt concerning the place of the commission of the crime, and according to which it might have been committed either in one or more counties,·then the court of either of the counties first obtaining jurisdiction of the defendant will have the right to try him and to submit to the jury the question of venue, and if it returns a verdict upholding the jurisdiction it will not be disturbed.

3.    In support of this ground it is earnestly insisted that proof of the confessions made by defendant to the sheriff of the county and to his deputy were incompetent because in violation of our statute known as the "Anti-sweating Act." (Section 1649b-1 of Ky. Statutes). We have held, however, in construing that act that unless the confession was obtained in the manner forbidden therein, it will be competent evidence against the defendant. Comth. v. Harris, 177 Ky. 607; Coats v. Comth., 191 Ky. 521; Dials v. Comth., 192 Ky. 444, and numerous other cases referred to therein. We will not attempt to interpret the meaning and application of the statute in this opinion, but will refer only to the cited cases wherein it is done. It is sufficient to say that in this case the proven confessions were not obtained in any of the interdicted manners and were, therefore, competent, which renders this objection without merit.

4.    Under this ground counsel for both sides engage in lengthy discussions concerning the meaning and applicability of section 465 of our statutes relating to amendments of the criminal laws after offenses committed under them, and to the applicable punishment when it is mitigated by the amendment. Howsoever interesting and instructive the discussion might be, we are convinced it has no application to the facts of this case. The 1922 amendment to section 1155, as we have seen, reduced the minimum punishment for the offense denounced, but the one returned by the jury in this case was between the minimum and maximum punishments of both the statute and the amendment and above the minimum of either, and that being true the error of the court, if one, in failing to instruct the jury according to the modifications contained in the amendment did not prejudice the substantial rights of the defendant, in which case, under the provisions of section 340, Criminal Code, we are not au-

thorized to reverse the judgment of conviction therefor. The exact question was before this court in the recent case of Middleton v. Comth., 197 Ky. 422. That prosecution was for a violation of a provision of our former statute relating to the manufacture, sale, etc., of intoxicating liquors, which was enacted in 1920. The trial was had after the enactment of a new law upon the subject in 1922. The minimum fine for violating the 1920 act was $50.00, but for the same offense committed under the 1922 act it was $100.00. Instructions were given under the latter act, but the fine imposed by the verdict was $150.00, and was above the minimum of the 1922 act, as well as that of the 1920 act, and we held that although the court committed error it did not operate to the prejudice of the defendant. Following that opinion, which we regard as supported by both reason and logic, it results that this objection must be overruled.

5. Finally it is urged under this ground that the Commonwealth's attorney committed reversible error in his closing argument to the jury by commenting on the failure of the defendant to testify, which is prohibited by the provisions of section 1645 of the present statutes, saying: "But his (defendant) failure to do so (testify) shall not be commented upon." As appears from the bill of exceptions, the attorney, after rehearsing and discussing the proof introduced by the Commonwealth, then said to the jury: "You have the evidence of the Commonwealth, and no evidence has been introduced by the defense at all," to which statement the defendant objected, and the court thereupon said to the jury: "The jury will not consider the statement by the Commonwealth, that 'There is no evidence introduced by the defense in this case at all.'" The defendant then moved to discharge the jury and continue the case, which the court overruled.

The effect of remarks of the Commonwealth's attorney, which were claimed to violate the inhibiting language of the statute by indirectly commenting on the failure of the defendant to testify, has frequently been before this court, and, so far as our investigation shows, the determinative facts in each case were (a), whether they could be construed as a comment on the failure of the defendant to testify, and (b), if so, whether under all the facts and circumstances of the case they were so prejudicial as to authorize a reversal of the judgment, since under the section of the Criminal Code, *supra*, no error

short of that will produce such a result. Some of the
cases wherein a reversal was denied are: Johnson v.
Comth., 29 Ky. L. R. 675; Barnes v. Comth., 101 Ky.
556; Farley v. Comth., 165 Ky. 600; Wallace v. Comth.,
167 Ky. 277, and McDonald v. Comth., 177 Ky. 224. See
also 16 Corpus Juris, 901-3, 916 and 920, as to the hold-
ing of the courts in other states where a similar statute
prevails, both as to the prejudicial effect of the remarks
with or without admonishment by the court. The text
on page 916, in discussing the effect of an admonishment
by the court similar to the one made in this case, says:
"Unless the improper remarks or misconduct of the pro-
secuting attorney are so prejudicial that it is obvious
that the error is not cured by the fact that the jury are
cautioned to disregard them, or unless the court's action
or instruction is not sufficient to overcome the prejudicial
effect resulting from the particular remark or miscon-
duct, prompt action by the court in reprimanding the
prosecuting attorney for making improper comments or
statements, or in sustaining an objection thereto, and an
immediate verbal direction to the jury to disregard them,
is usually sufficient to cure the error and to render it
harmless." The complained of remarks in the Johnson
case were: "No one denies that he killed his wife. No-
body has denied that he had a knife." In the Barnes
case they were that the defendant "had never yet said a
word." In the Farley case the attorney pointed his
finger at the defendant and said: "Nobody has denied it
(the testimony for the Commonwealth)." In the Wal-
lace case the remark was: "Has that ( a proven admis-
sion by one of the defendants) ever been denied?" and in
the McDonald case it was claimed by the defendant that
the attorney said: "There were no eye-witnesses to this
killing; but two men know or knew who did it, Mr. Dabbs
(deceased) and the man who did the killing. Dabbs is
dead and no one told us how it occurred." The court
in that case certified that the attorney made remarks
"tending to be construed as reflecting or commenting on
the failure of defendant to testify without directly criti-
cizing the defendant because of his failure to testify,"
and that the court admonished counsel in the presence
of the jury "that no comment upon the reference to de-
fendant's failure to testify could or should be made."
In all the cited cases the court held that the remarks
complained of were not (in view of the undisputed facts

and circumstances, and in view of the admonishments by the court), sufficiently prejudicial to authorize a reversal of the judgment. In disposing of the objection in the last case referred to, the court recited the Commonwealth's proof, including the incriminating circumstances, and said: "All these circumstances, which the defendant did not deny or explain, made his failure to testify so apparent to the jury, that this fact could not have received any additional emphasis from counsel's reference thereto. Indeed, the facts developed by the prosecution point so unerringly to the guilt of the defendant, that we have no doubt that the same verdict would have been returned by the jury had no reference of any kind been made by counsel to the fact that the defendant did not testify in his own behalf."

Perhaps in none of the cases referred to did this court *expressly* hold that the error would not authorize a reversal, *if not prejudicial,* if the comments were clearly and indisputably within the inhibitions of the statute, but all the cited opinions *inferentially* and *necessarily* so held, and in the absence of imperative provisions in the statute to the contrary, we see no reason why this error should not be given the same effect in practice, and be governed by the same Code provision, *supra,* as any other one. Were the rule otherwise there would be many cases where the guilt of the defendant was *admitted* or *overwhelmingly* proven, of which this one is an illustration, and yet we would be compelled to reverse the judgment when the error complained of did not prejudice the defendant in the least for the reason that the comment of counsel contained no statement which the jury, as sensible men, did not already know. In the case of Sutton v. Comth., 23 Ky. L. R. 307, the attorney in his opening statement to the jury said: "That the defendant had a right to testify in his own behalf; that if he did so, it was then the priviledge of the Commonwealth to impeach and contradict him by showing that he was unworthy of credit." This court, in denying reversible effect to the statement, said: "We can not believe, however, that every digression of a Commonwealth attorney from the strict line of professional and official requirement, though occurring in the presence of the jury, can be treated as necessarily prejudicial to the rights of the accused. We must assume that a jury is composed of that class of men described in the statute as being 'citizens of fair char-

acter, approved integrity and well informed.' Such a. jury cannot be reasonably expected to forget the solemn and important duty imposed by their position, and to disregard their oaths, and the explicit, plain admonitions of the law contained in the instructions, and render their verdicts based upon fugitive and unsupported statements of the prosecuting attorney. The jury must know, that he, as others in the zeal of his cause and in the ardor of the prosecution, may be borne on the tide of a moment beyond a position fully warranted by the situation, and they will make allowance accordingly."

In this case the defendant's guilt was proven by his uncontradicted confessions, supplemented by more or less convincing circumstances. The jury just a short while prior to the complained of remarks had seen him decline to testify, and it seems to us that it would be but trifling with justice and making a mockery of criminal trials to hold, without the invasion of some constitutional right, that the particular remarks complained of, under all the circumstances of the case, were sufficient after the admonishment by the court to the jury to authorize a new trial, and entertaining that view, supported as we are by the cases, *supra,* we decline to do so.

We are aware that this court has rendered opinions reversing judgments of conviction for improper remarks by the Commonwealth's attorney with reference to the same subject matter under consideration, but the cases in which it was done presented an entirely different state of facts from those appearing in this record, and under them the court held that the reference made by the attorney was prejudicial to the substantial rights of the defendant, but this case, because of its essentially different facts, is not to be governed by those opinions. Nor would we be understood, by what we have said, as approving such references by the attorney as were made in this case, since it is always the better practice to abstrain from encroachments upon the prescribed course for the conduct of trials. To do so not only assures fairness but eliminates possible errors that might necessitate a reversal of whatever judgment was obtained, and attorneys should studiously guard their conduct and remain within the limits of their license and privileges.

Finding no error authorizing a reversal of the judgment, it is accordingly affirmed. Whole court sitting.