### Handy v. Commonwealth.

(Decided October 9, 1931.)

H. E. HAY for appellant.

J. W. CAMMACK, Attorney General, (HOWARD SMITH GENTRY, of counsel), for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Clayton Handy, Logan Kelly, Bennie Ashcraft, and Elmer Horn, were jointly indicted by the grand jury of Estill county in which they were charged with criminally burning a church located in that county. In a second count they were charged with a conspiracy to burn the church building, and pursuant thereto it was done. At the separate trial of appellant (to whom we shall hereafter refer as defendant) he was convicted and punished by confinement in the penitentiary for two years. On this appeal from the verdict and judgment thereon he seeks a reversal upon three grounds, which are: (1) Error of the court in not instructing the jury to acquit him because the testimony of Logan Kelly, a codefendant in the indictment and an accomplice, was not corroborated as required by section 241 of the Criminal Code of Practice; (2) error in permitting Logan Kelly, an alleged conspirator, to testify concerning guilty admissions and con-

fessions of defendant made after the burning and which, as insisted by counsel, is violative of the rule excluding proof of statements of a coconspirator made after the purpose of the conspiracy was accomplished; and (3) that the court erred in giving an instruction on aiding and abetting when the indictment charged defendant only as a principal.

■ In disposing of ground 1 (and also perhaps for a better understanding of grounds 2 and 3) we deem it proper to make a brief statement of the facts as uncontradictedly proven at the trial.

The offense was committed on Saturday night, June 21, 1930, somewhere between 11 and 11:30. The church building was located about thirty feet from the right of way of a railroad and services were attempted to be held therein on that night. About the time the preacher commenced to read his Bible lesson, a disturbance arose just outside the front door of the building, and the proof is abundant that those named in the indictment, including the appellant and defendant, Clayton Handy, and others who were not indicted, actively participated. It consisted in loud, profane, and vulgar talk to such an extent that one could hardly be heard while attempting to speak in the church building, and the vulgarity was so obscene that the court did not require the witnesses to repeat it at the trial. A member of the church went out to quell the disturbance and he was shortly followed by the preacher and others. They took into their custody one of the participants, and the others, including defendant, announced in fierce tones and threatening manner their intention to rescue him.

Finally Kelly promised to take the captured belligerent into his keeping and conduct him away from the church; but that was not done, and the disturbance continued until the services were abandoned and the congregation dispersed. The preacher and some one or two of his congregation were the last to leave, and they received at the hands of the disturbers, of which defendant was an active member, most unfriendly denunciations, accompanied with threats to tear down the church building. Those persons, so last departing, had scarcely gotten off the church grounds until they heard the breaking of glass by the throwing of stones or other missiles, and the process of demolishing the building lasted for a considerable time and resulted in its being largely destroyed. The

remaining portion of it and the debris from the destroyed portion was then ignited and the whole burned to ashes.

The preacher lived up the railroad but a short distance from the church building, and he, and some other witnesses at or near his house, heard and saw what occurred, and they testified substantially to the foregoing facts, and to the further fact that while the fire was raging Kelly and the present defendant, Handy, passed the preacher's residence on the railroad track and while they were opposite the residence Kelly said to Handy: "You ought not to have burned that church up that cost them people money. You will get a trip for that." To which Handy replied with an oath, "If I get a trip out of it you will get one too." That conversation was testified to by at least two, and perhaps three, witnesses who were at the parson's residence and it was corroborated by Kelly. The latter also testified that after the fire was started, and perhaps after it had subsided, Elmer Horn, another defendant in the indictment, told witness in the presence of the instant defendant (Handy) that he (Handy) was the one who actually set fire to the building and defendant did not deny it. It was also proven that a short while before the fire started Kelly and the other defendants went to the residence of a Mr. Dunnaway, located only about 100 yards from the church, and procured some matches. It was positively proven, and was admitted, that the same disturbing crowd that broke up the meeting and destroyed a portion of the church building remained around about the church and within from fifty to one hundred feet of it, until after the fire had practically done its work; except defendant testified that he was away about thirty or forty minutes during which time he accompanied a young lady, who lived something like one mile up the railroad, to her home from the church, but the overwhelming preponderance of the testimony established the fact that he was not absent for any such time, or for any such purpose, but that on the contrary he was present all the while and was a willing participant, and the conclusion is inevitable that he was as much engaged in the unlawful conduct as were the others.

The guilty proof against defendant as so outlined is not weakened by his testimony (which consisted in a denial of participation by him in starting the fire, and of his weak and contradicted alibi above referred to), but, on the contrary, it is strengthened by his incredible

statements on many points, an analysis of which leads to the conclusion of his guilt rather than of his innocence. From the foregoing outline of the testimony heard upon the trial we have no trouble in concluding that ground 1 is without merit, since the necessary corroboration of Kelly's testimony, of the absence of which complaint is made, abundantly appears in the record and the court did not err in overruling defendant's motion for a peremptory instruction of acquittal.

■ In order for ground 2 to prevail, it should be made to appear that the alleged conspirator, Kelly, confessed after the fire to the burning, and connected defendant with it; but that was not the nature and character of his testimony. On the contrary, one portion of his testimony to which objection is made consisted in a conversation with defendant on the railroad in front of the residence of the pastor of the church, and that conversation was testified to by witnesses who were present at that residence and heard the conversation. The other item of Kelly's testimony sought to be brought within the ban of this ground was the statement by him that Horn after the fire accused defendant with the burning and that defendant was present and did not deny it. So that, what was actually proven by Kelly were admissions (one expressed and the other by silence) of defendant that he was a guilty participant in the burning. Therefore, the rule contended for in support of this ground has no application to the facts, and for that reason the ground itself cannot be sustained.

■ The case of Hogan v. Commonwealth, 230 Ky. 680, 20 S. W. (2d) 710, 711, settles the contention made by defendant's counsel in support of ground 3, against his client. The record in that case presented facts very similar to those appearing in this one. The indictment charged appellant and his codefendant therein only as principals, but the court on his separate trial gave an instruction on aiding and abetting. The same ground now under consideration was also urged in that case, and in denying it we said: "The argument is that both defendants were indicted as principals, and, as neither was accused of being an aider or abettor, neither could be convicted therefor. In this respect counsel is in error. Section 1128, Ky. Stats., makes accessories before the fact liable to the same punishment as principals. Construing this statute, we have held in numerous cases that in a joint indictment for a felony either of the defendants

may be convicted as principal or as aider and abettor. Com. v. Lawson, 165 Ky. 4, 176 S. W. 359; Greenwell v. Commonwealth, 125 Ky. 192, 100 S. W. 852, 30 Ky. Law Rep. 1282; McGehee v. Commonwealth, 181 Ky. 425, 205 S. W. 577; Reed v. Commonwealth, 125 Ky. 126, 100 S. W. 856, 30 Ky. Law Rep. 1212; Robinson's Criminal Law (2d Ed.) sec. 186.'' That case, and those cited in the excerpt from the opinion therein, are conclusive upon us now, since we think the rule therein announced is sound and is helpful in punishing those guilty of the infractions of the law and at the same time is not prejudicial to their substantial rights. Cf. Ray v. Com., 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297.

Perceiving no error authorizing a reversal of the judgment, it is affirmed.