Jesse NEAL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 16, 1956.

Rehearing Denied June 21, 1957.

574

Charles L. Hobson, Hobson & Meigs. Frankfort, for appellant.

Jo M. Ferguson, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Jesse Neal was jointly indicted with his teen-age son, William, for the murder of one Kie Grubbs. The circuit court held that William could not be tried under the indictment because he was a juvenile and the statutory procedure governing juvenile offenders had not been followed. Upon the separate trial of Jesse, he was found guilty of voluntary manslaughter and sentenced to five years in the penitentiary.

Appealing, Jesse asserts as his principal ground of error that the evidence gave rise only to suspicion or conjecture as to

his guilt, and therefore was insufficient to sustain the conviction.

The crime was alleged to have been committed on the night of August 7, 1953, in Frankfort. On August 13, 1953, a badly decomposed body, sufficiently identified as being that of Kie Grubbs, was found lying in an abandoned stone quarry a short distance from the home in which Jesse Neal lived with his son and the latter's wife. Upon examination of the body by a pathologist, it was determined that Grubbs had been killed by being shot in the back with a shotgun. The Neals were arrested and charged with murder.

The evidence of Jesse Neal's guilt was entirely circumstantial. Without attempting to state the evidence in detail, we will enumerate the facts that connect Jesse with the crime.

Grubbs was killed with a shotgun. A shotgun was found concealed under the Neal house. Holes in the inside wall of the Neal kitchen, near the back door, were identified as having been made by shotgun pellets.

Grubbs was a deserter from the Army. For several days prior to his death he had been staying at the Neal home at night, while hiding out in the hills during the daytime.

A neighbor who lived about 50 yards from the Neal home testified that on the night of August 7, 1953, around 9:30 p. m., he heard what he identified as a pistol shot in the general direction of the Neal home, and he heard "a boy jumping up and down in the floor hollering 'daddy, daddy, you should not have bothered that pistol—look, he is dead now.'" The neighbor's wife heard the shot, and someone crying, but did not distinguish any spoken words.

William Neal's wife testified that on a night during the first two weeks of August 1953 she heard a shotgun go off in the house. She was in the bedroom. Her husband and Jesse were somewhere in the house, but she did not know where. She thought the shot came from the kitchen. She did not hear any voices after the shot was fired, nor did she see Grubbs at any time that night. She was unable to recall anything that occurred that night after the shot was fired. (In a pre-trial statement, which was read for the purpose of impeachment, she had said that she and her husband were lying in wait for Grubbs, because he had stolen Jesse's pocketbook, and when Grubbs came into the darkened kitchen William shot him, intending only to scare him.)

Jesse's driver's license was found in a cardboard box near Grubbs' body, along with personal effects and papers of Grubbs'.

At the examining trial in police court, when informed that he was charged with having helped to dispose of or hide Grubbs' body, Jesse said: "We didn't hide it, Judge—we just took it and laid it out there where everybody could see it."

Summarizing the evidence, we find adequate proof that Jesse was in his house the night a shot was fired in the kitchen, and, according to the voice heard by the neighbor, someone was "dead now" in that vicinity. A person who had been staying at the Neal home proved to be dead. Jesse had helped carry the body of that person from some point to the abandoned quarry. The time of death of that person, as estimated by the pathologist, coincided approximately with the night the shot was fired. The death was associated with the fact that "daddy" had "bothered the pistol."

We think this evidence pointed to Jesse Neal's guilt in a sufficiently unerring way to sustain the conviction. The evidence was not as consistent with his innocence as with his guilt. The circumstances were not explainable, naturally and reasonably, consistent with his innocence. The only hypothesis consistent with Jesse's

innocence is that he was in a separate room of the house when William, with no preconceived plan of action with his father, shot Grubbs. This hypothesis is not a reasonable one, because of the testimony of the neighbor that immediately after the shot was heard someone hollered, "daddy, daddy, you should not have bothered that pistol—look, he is dead now." Since only one shot was heard in the vicinity that night, and since William's wife testified that the shot seemed to come from the kitchen of the Neal house, the only reasonable conclusion is that the boy who was heard hollering to his daddy was in the Neal house and was referring to the shot which had been just fired. Since William's wife testified that there was no one in the house that night other than William and Jesse, it was established quite conclusively that Jesse was the "daddy" referred to, and that he was being criticized not because he was at the moment bothering the pistol, but because he *had* bothered the pistol, as a result of which the man was "dead now." This evidence is not consistent with the theory that Jesse was alone in another room when the shooting took place.

It is contended that this case is governed by Tarkaney v. Commonwealth, 240 Ky. 790, 43 S.W.2d 34. However, in that case there was no proof that the death was the result of a criminal agency; the identification of the body was most unsatisfactory; the place of death was not established; the defendant was not placed with the deceased at or near the time of death; and there was nothing to tie the defendant up with the disposition of the body other than the statement of a witness that a pair of trousers on the body looked like some the defendant was in the habit of wearing.

■ A second contention of the appellant is that the court erred in asking appellant's counsel, in the presence of the jury, whether he had any objection to the jury separating during a recess. It is not clear from the record that this took place.

However, if it did take place, it was not prejudicial error, because the appellant was not convicted of murder, but only of manslaughter. See Joseph v. Commonwealth, 303 Ky. 712, 199 S.W.2d 135.

■ Appellant's third contention is that the attorney for the Commonwealth committed reversible error by commenting upon the failure of the appellant and his codefendant to testify. During the course of his closing argument the Commonwealth's attorney said, "And the reason it (the evidence) was circumstantial, gentlemen, is because the secret of what went on in the night of August 6, 1953 is locked within the four walls of that building; known only to the three people who were in that building, Carolyn Neal, William Neal and Jesse Neal. And since we speak of omissions from the witness stand, where was the witness William Neal?" (Here an objection, interposed on the ground that William Neal could not be compelled to testify, was overruled.) Later, the Commonwealth's attorney said, "but for once the silence of Jesse Neal was broken * * *" (referring to the statement made in police court). No objection was here interjected but at the close of the argument the latter comment was urged as a ground for setting aside the swearing of the jury.

Section 11 of the Constitution of Kentucky and KRS 455.090 prohibit comment upon the failure of a defendant to testify in a criminal or penal action. While these sections do not apply to a codefendant, it has been held that where a codefendant who has been granted a separate trial is called as a witness in the trial of the other defendant, and refuses to testify on the ground that it may tend to incriminate him, it is error to make comments emphasizing the fact of his refusal to testify. Dotye v. Commonwealth, Ky., 289 S.W.2d 206. See also dicta in Davis v. Commonwealth, Ky., 121 S.W. 429; McElwain v. Commonwealth, 146 Ky. 104, 142 S.W. 234, Thomas v.

Commonwealth, 257 Ky. 605, 78 S.W.2d 777. However, when he is not offered at all, the failure to call him is a legitimate subject of comment. McElwain v. Commonwealth, 146 Ky. 104, 142 S.W. 234. The comment of the attorney for the Commonwealth with reference to William Neal therefore was not improper.

■ A more difficult question is raised by the statement, "but for once the silence of Jesse Neal was broken," which may be considered an indirect comment on the main defendant's failure to testify. The test, as concerns indirect comments, is whether the comment is reasonably certain to direct the jury's attention to the defendant's failure to testify. Miller v. Commonwealth, 182 Ky. 438, 206 S.W. 630; Adams v. Commonwealth, Ky., 264 S.W.2d 283. Some isolated inferential comments have been held not to constitute prejudicial error. For example, in Barnes v. Commonwealth, 101 Ky. 556, 41 S.W. 772, 774, the comment that the defendant "had never yet said a word". And in Sebree v. Commonwealth, 200 Ky. 534, 255 S.W. 142, 145, the comment that " 'no evidence has been introduced by the defense at all' ". In a number of cases, references to the fact that a certain fact was "not denied" or that certain evidence was "uncontradicted" have been held not to constitute reversible error. Johnson v. Commonwealth, 94 S.W. 631, 29 Ky.Law Rep. 675; Farley v. Commonwealth, 165 Ky. 600, 177 S.W. 431; Wallace v. Commonwealth, 167 Ky. 277, 180 S.W. 381; Ridner v. Commonwealth, 242 Ky. 557, 46 S.W.2d 1102; Hanks v. Commonwealth, 248 Ky. 203, 58 S.W.2d 394.

The comment here in question did not follow immediately the reference to the failure to call William Neal as a witness. It was isolated and only mildly inferential. We cannot say that it was so reasonably certain to direct the jury's attention to Jesse Neal's failure to testify as to violate the constitutional and statutory prohibitions.

■ The appellant asserts as a further ground of error that the attorney for the Commonwealth deliberately misstated the evidence in an effort to impute motive to the appellant.

The statement complained of appeared in the following context: "Now. Why did they take the life of Kie Grubbs? Reluctantly the witness Carolyn Neal said Jesse Neal lost his pocketbook and that the Grubbs boy may have taken it. Now there is no proof as to which one of the two fired the shot, but who had the most motive? What is there said that says William Neal had any reason to kill him? What was there said that Jesse Neal had any reason to kill him? Because he took his pocketbook."

At this point there was an objection to the argument on the ground that there was nothing in the evidence to show that Jesse Neal thought that Grubbs had taken his pocketbook. Before the court ruled on the objection the Commonwealth's attorney interjected, "Well, he lost a wallet then." The court then overrruled the objection.

While the objection was well taken and should have been sustained, the Commonwealth's attorney achieved the same result by correcting the statement himself. Had the court sustained the objection and properly admonished the jury there would have been no prejudicial result. Any prejudice that may have arisen was immediately dissipated by the attorney's own correction.

Appellant next contends that the statement made by the defendant at the examining trial, with reference to disposing of the body, was inadmissible because the police judge had failed to ask appellant whether he desired counsel and to advise him of his constitutional right against self-incrimination.

■ It is true that the testimony heard before the jury does not show that the de-

fendant had been advised of his right to counsel. However, the policeman who testified concerning the statement made in the police court was first examined outside the hearing of the jury and there he said, "He (police judge) asked him if he wanted counsel or wanted to waive or wanted to stand examining trial and that is when he came up to the desk to find out what it was all about."

The Criminal Code of Practice, section 51, requires that the magistrate inquire as to whether the defendant desires the aid of counsel. We think that this was complied with.

■ It appears that the statement made by Neal before the police judge was simply blurted out in the course of questions being asked by Neal as to what was the charge against him. He was not then being plied with questions by the prosecution, nor was he before the police court for the purpose of being compelled to give evidence. Under ordinary circumstances a failure to warn an accused person of his constitutional privilege against self-incrimination does not constitute a violation of that privilege. Taylor v. Commonwealth, 274 Ky. 51, 118 S.W.2d 140. We do not consider the circumstances here so extraordinary as to have required that the warning be given.

The last contention of the defendant is that it was error to instruct on aiding and abetting. It is argued that since William Neal could not be tried under the indictment, the indictment was a nullity as far as he was concerned; the indictment was then against Jesse Neal alone, for murder, and under such an indictment he could not be convicted of aiding and abetting.

■ It is quite true that when only one person has been indicted for a felony he cannot be convicted of aiding and abetting. Hollin v. Commonwealth, 158 Ky. 427, 165 S.W. 407, L.R.A.1915E, 608 and Bailey v. Commonwealth, 295 Ky. 441, 174 S.W.2d 719. But where two or more defendants are jointly indicted as prin-

cipals, anyone of them, although tried separately, may be convicted of aiding and abetting. Hogan v. Commonwealth, 230 Ky. 680, 20 S.W.2d 710; Handy v. Commonwealth, 240 Ky. 432, 42 S.W.2d 532 and Alder v. Commonwealth, 277 Ky. 136, 125 S.W.2d 986. The reason for the distinction is set forth at length in Mulligan v. Commonwealth, 84 Ky. 229, 1 S. W. 417, and is in essence that the object of the indictment is to make known to the accused the crime he is charged with. To indict both the principal and the aider and abettor as principals gives notice that the Commonwealth can or will attempt to prove that one did the act and the other aided and abetted. On the other hand an indictment of only one person as the sole perpetrator of a crime gives no notice of the possible charge of aider and abettor.

■ Here there was a joint indictment, giving notice of the possibility of the charge of aiding and abetting. The mere fact that procedural matters prevented the codefendant from being tried under the indictment in no way affected the notice given by the joint indictment.

The judgment is affirmed.