## Rawlings and Spivey v. Commonwealth.

(Decided May 6, 1921).

### Appeal from Estill Circuit Court.

1. Indictment and Information—Requisites and Validity.—In an indictment in which prior convictions of felonies are charged against the defendant for the purpose of invoking the punishment provided by section 1130 of the statutes, the separate charges of former convictions need not close with the statement that the offense was "against the peace and dignity of the Commonwealth of Kentucky;" nor is it requisite that such statement immediately follow the accusatory part of the indictment for the particular offense charged, and if that statement appears at the close of the indictment, and following the allegations of prior convictions, it will be sufficient.

2. Criminal Law—One Jointly Indicted With One Formerly Convicted.—The increased punishment provided by the above section of the statutes for offenders who have been formrly econvicted of felonies, is no element of the crime for which the indictment was returned, and it is therefore competent for a defendant not convicted of a prior conviction of a felony or felonies to be jointly indicted with the one against whom such prior convictions are alleged, since each of the defendants would then stand charged with the same offense, although the one convicted of prior felonies would be liable to be visited with greater punishment than would his co-defendant.

3. Arrest—Arrest Without Warrant—What Force May be Used.— An officer, or one summoned to assist him, may make an arrest

without a warrant when an offense is committed in his presence
or when the officer has reasonable grounds to believe that a felony
has been committed, but if the arrest is for an offense which is
a misdemeanor only, or for a felony not committed in the pres-
ence of the officer, neither the officer nor his assistant has the
right to shoot or wound the person sought to be arrested while
fleeing from the officer, but if the accused shoots at the officer or
his assistant, when either was within the line of his duty in try-
ing to make the arrest a felony is then committed in his presence
and he may use such force in pursuing, and in his endeavor to
capture, the offender as may be necessary for that purpose, even
to the taking of his life; but neither the officer nor his assistant
has any such right if he violated his duty in an effort to make the
arrest and made it necessary for the one pursued to shoot at him
or them in order to defend himself from their unwarranted acts.

4.  Criminal Law—Evidence of Drunkenness.—Where a vital fact in
    the case was whether the injured person committed a misde-
    meanor in the presence of the officer by being drunk and disorder-
    ly, evidence that a short while thereafter he talked and acted as
    one considerably intoxicated is competent and should be admitted
    by the trial court when offered by the defendant, although the
    alleged offender testified that he drank intoxicants subsequent to
    his attempted arrest and before the time referred to by the of-
    fered witness.

SAMUEL M. WILSON and ROBT. R. FRIEND for appellants.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Under an indictment charging them with malicious
shooting and wounding Nesbert Bryant (of which he did
not die), an offense denounced by section 1166 of the stat-
utes, the appellants, Albert Rawlings and Joe Spivey,
were tried in the court below and were each convicted of
shooting in sudden affray, or in sudden heat and passion
and without previous malice, an offense denounced by
sec. 1242 of the statutes, and each of them was punished
by a fine of $250.00 and confinement in the county jail for
a period of six months, and from the judgment pro-
nounced on the verdict they prosecute this appeal.  Num-
erous grounds are relied on in the motion for a new trial,
but all of them are abandoned here except four, which
are: (1) that the indictment was fatally defective; (2)
that appellants were entitled to a directed verdict in their
favor; (3) that the court erred in its instructions to the
jury and failed to give the whole law of the case, and (4)

that the court erred in the admission and in the exclusion of evidence.

1.   The indictment, in what might be termed its first paragraph, accused the defendants in appropriate language of the offense denounced by the statute (section 1166), but that accusation was immediately followed by other allegations that the appellant, Spivey, had theretofore twice been convicted of a felony, and it was sought to apply to him what is commonly known as the "Habitual Criminal Act," which is section 1130 of the statutes, so that his punishment, if he should be found guilty, could be accordingly fixed by the jury.   There were no habitual criminal acts charged against the appellant Rawlings. The objection to the indictment as to both of the defendants is that at the close of its accusation of the particular offense charged, and which counsel designates as its first paragraph or count, there is no statement that the offense was committed "against the peace and dignity of the Commonwealth of Kentucky," as is required by section 123 of the Constitution.   That statement, however, is contained in the indictment but at the end of it, following the charges of former convictions of defendant Spivey of prior felonies.   The draftsman of the indictment divided it into two numbered paragraphs or counts, the second one alleging only the facts necessary for the application of the "Habitual Criminal Act."   It was not necessary, or at all required, that the indictment should be so paragraphed or separated, since it charged but one offense, and the facts alleged in what the pleader designated the second count constituted no element of that offense.   McIntyre v. Commonwealth, 154 Ky. 149.   The precise question was disposed of by this court adversely to the contention of counsel for appellant in the case of Boggs v. Commonwealth, 9 Ky. L. R. 342, in this language: "It was not necessary that the words ('against the peace and dignity of the same') should be appended to each specification of former conviction for felony." The opinion in the McIntyre case, after thorough and extensive consideration of the question, held that the increased punishment provided by the "Habitual Criminal Act" was no element or ingredient of the principal offense charged in the indictment and that the increased punishment therein provided for, applied only to a certain class of hardened and habitual criminals, and was enacted for

the deterring influence it might have upon the incorrigible offender. This being true it, of course, results that the allegations of former convictions need not be contained in a separately numbered count from the accusatory part of the indictment, and it likewise follows that the statement in the indictment that the offense was committed "against the peace and dignity of the Commonwealth of Kentucky" need not be made except at its close.

But, it is further urged that this objection should especially apply to the defendant, Rawlings, against whom no prior convictions are alleged, which no doubt would be true if the offense charged against his co-defendant, Spivey, was a different one from that charged against him. But that fact is not true, since each of them are charged with the same offense, with additional facts alleged against Spivey affecting only the punishment which the jury might, in its discretion, visit upon him if he was convicted, but which additionally alleged facts were not intended to, nor do they in the least, affect the question of the guilt or innocence of Rawlings. We therefore find no merit in this contention.

2. The shooting of Bryant, with which defendants are accused, occurred in the town of Ravenna at about 1:30 a. m., July 4, 1920. Defendant Rawlings was a duly appointed and qualified deputy constable and was at the depot in Ravenna at about the hour above named when a passenger train arrived. He and his co-defendant, Spivey, and perhaps one or two other witnesses, testified that Bryant was in and about the depot just before or at the time of the arrival of the train, and while it remained there, in an intoxicated condition; that he was engaged at that time in some imprudent conduct and also he had concealed upon his person a pistol; that Rawlings concluded to arrest him and deputized Spivey to assist in doing so and as they approached him Rawlings said, "Say, boy!" whereupon Bryant drew a pistol and started to run, when Rawlings commanded him to "halt," but which he did not heed and continued his flight. Defendants pursued him and, according to their testimony and that of their witnesses, they fired three or four shots in the ground which they say was for the purpose of inducing Bryant to surrender. They further testified that after the firing of those shots in the ground Bryant fired at them, whereupon they returned the fire for the first time in his direction, resulting in the infliction upon him of a

flesh wound.   Bryant testified that he did not shoot at the defendants until after they had shot him, and that their first shots were not fired into the ground but were aimed at him; and other witnesses for the Commonwealth also testified that the first shots of defendants were directed toward Bryant. . Under this contradictory condition of the testimony we can find no ground for sustaining the second contention of appellants, *i. e.*, that they were entitled to a directed verdict in their favor; for, if they shot Bryant before he shot at them, merely for the purpose of checking his flight and to arrest him, and not in their necessary self-defense, they cannot be excused, since the law is that an officer in arresting a misdemeanant has no right to shoot, wound or kill him solely for the purpose of effecting his arrest, or to prevent his escape.   Stevens v. Commonwealth, 124 Ky. 32; Reed v. Commonwealth, 125 Ky. 126; Smith v. Commonwealth, 176 Ky. 466, and Hickey v. Commonwealth, 185 Ky. 570.

Subsection 2 of section 36 of the Criminal Code authorizes an officer to arrest one without a warrant if the offense is a misdemeanor and committed in the presence of the officer, or if the officer has reasonable grounds to believe that the supposed offender has committed a felony though not in his presence.   If Bryant was guilty of being drunk and disorderly at the depot in Ravenna in the presence of Rawlings, the latter had the right to arrest him, and had the further right to summon Spivey to assist him in doing so; but under the anthority of the cases, *supra,* neither of them had the right to shoot and wound Bryant solely for the purpose of accomplishing the arrest.   For the reasons indicated this contention must also be denied.

 · 3.   Under this contention serious complaint is made of instruction No. 5, given by the court; its refusal to give instruction X, offered by defendants, and the failure of the court to give to the jury the whole law of the case.   Instructions Nos. 5 and X are too long to insert in this opinion and we will content ourselves by saying that No. 5, given by the court, properly presented one phase of the law applicable to the facts in this case, in that it excused defendants on the ground of self-defense, notwithstanding they may have made the first advance or assault on Bryant, which they were authorized to do as stated in the instruction, if he had committed a misdemeanor in their presence.   The difficulty with the offered

instruction X is that it sanctions the right of defendants to use all the force necessary, or which they deemed to be necessary, to capture Bryant after he had fled, which, of course, is broad enough to include the right to wound or even kill him, if it reasonably appeared to the defendants to be necessary to do so, when, as we have seen, the law gave them no such right. The language contained in instruction X rendering it objectionable, as indicated, is: ''And if, while defendants were attempting to arrest said Bryant, the latter resisted arrest *or attempted to flee,* (italics ours) said defendants had the right to pursue him and to use such force as was necessary, or reasonably appeared to defendants to be necessary to make the arrest,'' etc. Under the quoted language the defendants would have the right to pursue Bryant and to use such force (including wounding or killing him) as they deemed necessary to arrest him, although he offered no resistance except flight. We are of the opinion, however, that the court failed to instruct the jury upon one material phase of the case and, therefore, committed the error of failing to give to it the whole law of the case. As we have seen, defendants had the right to arrest Bryant without a warrant if he committed an offense in their presence or they had reasonable grounds to believe that he was guilty of a felony. Under such circumstances, they had the right in their effort to arrest him to pursue him for that purpose, and he had no right to stop or resist their pursuit by shooting at them, assuming that they had not transgressed their rights at the time he fired his shot. If the testimony of defendants, and that of some of their witnesses, is to be believed, Bryant shot at them while they were pursuing him for the purpose of making the arrest and before they fired any shots at him. If that testimony is true Bryant committed a felony in the presence of the officers, and thereupon they had the right to arrest and pursue him and to use such force as was necessary, or appeared to them to be necessary for the purpose, even to the taking of his life. See the Stevens, Reed and Hickey cases, *supra.* The case of Petrie v. Cartwright, 114 Ky. 103, 59 L. R. A. 720, is not an authority to the contrary, since in that case no felony was committed *in the presence* of the officer or at all, he having only a suspicion without reasonable grounds to believe that the person being pursued had committed a felony, under which circumstances it was held that the offi-

cer had no right to wound or kill the fleeing offender. In this case, as in the others referred to, the felony of which Bryant was guilty, if any, was committed *in the presence* of the officers when he shot at them, under the circumstances to which they and some of their witnesses testified. If, however, Bryant shot at the defendants after they had unlawfully shot at him, and only in an effort to defend himself from such unlawful assault, he was not guilty of a felony and in that case the defendants would have no right to shoot him upon the ground that he had committed a felony in their presence and was fleeing from arrest. These phases of the case were not submitted to the jury by any instruction and we are clearly of the opinion that the court erred in not doing so. We do not deem it necessary to undertake to frame the indicated instruction or instructions, for the guidance of the court on another trial, for the all sufficient reason that the facts developed upon another trial may be substantially different from those appearing in the present record.

4. A vital issue in the case was whether Bryant was intoxicated upon the occasion in question. He testified that he was not, while defendants and some of their witnesses said that he was. A short while after Bryant was shot he went to the residence of Dr. Snowden for the purpose of having his wound treated. In attempting to arouse the doctor he broke out the glass in the front door to the residence and otherwise acted and talked as one very much intoxicated. Defendants offered to prove these facts by Dr. Snowden, but the court sustained the Commonwealth's objections to the testimony and declined to allow it introduced. We are not advised upon what ground the court based its ruling in rejecting this testimony and we have been unable to find any that would authorize it. It is true that Bryant testified that he had taken a drink, or perhaps more than one, after the shooting and before he went to the residence of Dr. Snowden, but whether he did so or not, or whether those two or three drinks, if he did take them, produced the intoxicated condition proposed to be proven by the witness were questions for the consideration of the jury, and since, as we have seen, a vital issue in the case was whether he was intoxicated we have concluded that the offered evidence was relevant and pertinent and the court should have admitted its introduction. The same character of testimony offered by Dr. Wallace was also re-

jected by the court, but the time to which his testimony was directed was perhaps as late as 4 o'clock in the morning, and we are inclined to the opinion that it was so far removed from the time of the shooting as to possess but little, if any, probative effect, and we do not think the court erred in rejecting the offered testimony of that witness. We have considered the other questions discussed but do not regard them as of sufficient materiality to merit discussion.

For the reasons indicated the judgment is reversed with directions to grant defendants a new trial and for proceedings consistent with this opinion.