## Collins and Hager v. Commonwealth.

(Decided Octobre 4, 1921.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Aider and Abettor—Instructions.—An instruction in a homicide case which authorizes the conviction of one of the defendants as an aider or abbettor, without first requiring the jury to believe beyond a reasonable doubt that the principal had shot and killed decedent willfully, unlawfully, feloniously or with malice aforethought was erroneous.

2. Criminal Law—Commission of Felony in Presence of Officer—Instructions.—An instruction which bases the right of an officer of the law in whose presence a felony has been committed to shoot and kill the deceased, to depend wholly upon the self defense of himself or the other officer present, is erroneous.    The law exacts from such officer the duty, where a felony has been committed in

his presence, to arrest the accused, and in doing so he is given all
the protection afforded by law to officers in making felony arrests,
and he may use such force as may be necessary to overcome such
resistance even to the taking of the life of the accused; and it
matters not that the officers, or either of them, may not at the
time be in danger of losing their lives at the hands of the accused.

3.    Criminal Law—Evidence.—On the issue as to how many loads
there were in a pistol the afternoon before the homicide when the
decedent got it from a neighbor's home, the evidence of such
neighbor that it was his custom to keep only five shells in a six-
shooter pistol was incompetent.

A. F. BYRD, A. J. MAY, W. W. WILLIAMS and B. M. JAMES for
appellant

CHAS. I. DAWSON, Attorney General, J. D. SMITH, JOHN M.
WAUGH and THOS. B. McGREGOR, Assistant Attorney General, for
appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellants, Collins and Hager, together with Frank
Addis and Russell Lee, were jointly indicted in the Floyd
circuit court, charged with the murder of Gerard Rich-
mond as the result of a conspiracy charged to have been
theretofore entered into by them.

Addis and Lee demanded and were granted a separate
trial, and the appellants, Collins and Hager, being placed
on their joint trial, were each found guilty of manslaugh-
ter and each sentenced to twenty-one years' imprison-
ment, from which judgment they have appealed.

As the judgment must be reversed because of erron-
eous instructions, it will be necessary to state only so
much of the evidence leading up to and resulting in the
homicide as will illustrate the errors.

The killing occurred in the mining town of Weeks-
bury, in Floyd county, which is an incorporated town.

On and prior to the 9th of October, 1920, Collins was
the town marshal of Weeksbury and Hager was the police
judge.    Prior to that time there had been much com-
plaint of the illicit traffic in liquor by persons in and
around the town and we gather from the evidence that
the officials of the town, together with many residents
thereof, were very active in breaking up and bringing
about a cessation of this traffic.

Saturday, the 9th of October, 1920, was pay day at the
mines in Weeksbury, and at such times the bringing
into the town of liquor was obviously more prevalent than
upon ordinary occasions.    On pay days particularly, and

the nights following, the officers and citizens were especially alert in preventing the transportation into the town of liquor.

In the earlier part of that night the two appellants, one city marshall and the other police judge, together with some others, were out in different parts of the town seeking to suppress this traffic, but later returned to the central part of the town where the two appellants engaged in a game of pool. While so engaged they were notified that a man was going down the street drunk and with a package containing liquor. They thereupon ceased playing pool and followed the alleged offender, who turned out to be the decedent, Richmond, and overtook him when he was near his home. They had been informed that the man was drunk and had a package containing whiskey and had offered their informant a drink, and as they approached the decedent from the rear the evidence is that he was going from one side of the street to the other and was apparently drunk.

The evidence of the two defendants, who were the only eye witnesses, is to the effect that as they came nearer to Richmond he stopped and got over next to the fence, presenting his side to them and having in his hand at the time they approached him a pistol; that then, for the first time, Collins recognized him and said to him: "Gerard, I will have to arrest you; take down that gun," and that thereupon Richmond immediately fired at and struck Collins in the leg and in the firing which followed Richmond was shot several times in the side and back.

The evidence of the Commonwealth, however, tended to show, by one or more occupants of a nearby house, that after the shooting first began they saw two men shooting as if shooting into the ground, the theory of the Commonwealth evidently being that the two officers shot Richmond after he had fallen.

The evidence tended to show that the two officers undertook to arrest Richmond, in the first place, for two misdemeanors said to have been committed in their presence, namely, the transportation of whiskey and the offense of being drunk; and the evidence of the two defendants, which is corroborated by other evidence not necessary to mention, shows that as soon as they undertook to arrest him he resisted and fired at Collins thereby committing in the presence of the officers a felony.

In addition to all this, the evidence of the defendants shows that when they came up with him and he placed

himself near the fence he not only had under his arm a package containing whiskey but also had in his hand a pistol, held and presented in such manner as to indicate his purpose to resist arrest.

So that up to the time appellants undertook to arrest Richmond he had been guilty, in their presence, according to the evidence of the defendants, of three misdemeanors: transporting whiskey, drunkenness and carrying a concealed weapon, and, according to the same evidence, upon their attempt to arrest him he immediately fired upon one of the officers and wounded him, thereby committing a felony in the presence of the officers.

The first instruction authorized the conviction of both defendants if the jury should believe beyond a reasonable doubt that either of them shot Richmond, as a result of which he died; and there was no reference in it to the conviction of either of them as aider or abettor; but this error might be deemed to have been cured by instruction number four if that instruction had properly submitted the aiding and abetting theory.

That instruction authorized the conviction of Hager as an aider and abettor if the jury should believe beyond a reasonable doubt that Collins wilfully, feloniously and with malice aforethought and not in the necessary, or to him apparently necessary defense of himself or Hager, shot and killed Richmond, if Hager was then and there present for the purpose of and feloniously and with malice aforethought, and not in the necessary or apparently necessary defense of himself or Collins, did aid, assist, counsel, abet, advise and encourage Collins to do the shooting. And the conviction of Collins as an aider or abettor was authorized if the jury should believe beyond a reasonable doubt that Hager, not in the necessary or apparently necessary defense of himself or Collins, shot and wounded Richmond from which he died, and that Collins was present for the purpose and did wilfully and feloniously and with malice aforethought, aid, assist, advise, abet or encourage Hager in doing such shooting.

This instruction authorizes the conviction of Collins as an aider and abettor although it does not require that Hager (the principal) should have done the shooting and killing either wilfully, unlawfully, feloniously or with malice aforethought. In other words the instruction does not require that the principal (Hager) should have wilfully, unlawfully, feloniously or with malice aforethought shot and killed Richmond before it author-

ized the conviction of the aider or abettor (Collins), thereby authorizing the conviction of Collins as an abettor although Hager had shot and killed Richmond in a manner neither wilfull, unlawful, felonious or malicious.

But the glaring error is in instruction number six, wherein the court instructed the jury that if Richmond was drunk or disorderly or transporting liquor in the presence of Collins that Collins had a right to arrest him with or without a warrant and that it was his duty to demand his arrest and the duty of Richmond to peaceably submit; but if they believed Richmond refused to be arrested that Collins had the right to make the arrest and that if he in good faith attempted to do so and while so engaged Richmond, with intent to prevent by force such arrest, shot at and wounded Collins or shot at Hager, or either of them, and there appeared to the defendants in the exercise of a reasonable judgment under the circumstances no other safe way to save their lives or the lives of either of them or to protect themselves or either of them from great bodily harm, or to make such arrest than to shoot and kill the deceased, the jury would then acquit the defendants on the grounds of self defense and apparent necessity.

Instruction number three was the self defense instruction and had already been given in the usual form, and yet the court in this instruction (number 6) confused the right of self defense with the duty and authority of an officer in whose presence a felony had been committed, and in the concluding clause of that instruction the right of the officer to shoot and kill the deceased is made to depend wholly upon the question of self defense of himself or the other officer present. The correct rule is that where an officer is attempting to arrest one charged with a misdemeanor and the one so charged resists arrest and either shoots or shoots at the officer, there is a felony committed in the presence of the officer and he is then authorized to arrest the accused upon a felony charge without a warrant, and in making such arrest is given all the protection provided by law to officers in making felony arrests; and it is the duty of the officer in making such arrest for felony to use such force as may be necessary to overcome such resistance even to the taking of the life of the accused and it matters not that the officer may not, at the time, be in danger of losing his life or limb at the hands of the accused.

The instruction (number 6) should have embraced this idea under the evidence in this case and should not have confused or intermingled with it the instruction on self defense.

In this case, as we have seen, the only two eye witnesses testified that the decedent had committed at least two misdemeanors in the presence of the officers and one felony, and if neither of the officers had been in danger from Richmond still the law exacted from them the duty, under their oaths, to use such force as was necessary to arrest the accused on a charge of felony committed in their presence.   Hickey v. Commonwealth, 185 Ky. 570; Rawlings and Spivy v. Commonwealth, 191 Ky. 401.

It appears from the evidence that the pistol which Richmond had on the occasion in question had been borrowed or taken from the residence of one John Kitchen; and facts and circumstances were introduced in evidence by the Commonwealth seeking to show that Richmond never did fire the pistol which he had.   The evidence showed that the pistol which Richmond had was a six-shooter, and when found had five cartridges in it and one empty shell.   Apparently in order to avert the force of this the Commonwealth introduced Kitchen, who testified in substance that he did not remember how many loaded cartridges were in the chamber of the pistol when Richmond took it from his home, but that it had some loads in it, and that his custom was to keep five shells in it as a general thing and that he sometimes left one empty shell in it and the other five loaded and that this had been his custom for about two weeks before the shooting.

This evidence, when analyzed, only means that the witness did not remember how many shells were in it when Richmond got it from his home that afternoon but, by stating what his custom had been, it was sought in this vague and uncertain way to contradict the testimony of the two defendants who stated that Richmond did fire at least one shot.   Manifestly the question was how many loads were in it when Richmond got it, and Kitchen's custom upon previous occasions was too vague and uncertain to be admitted in evidence, and upon another trial this part of the evidence will be rejected.

The judgment is reversed with directions to grant the appellants a new trial and for further proceedings consistent herewith.