## Sloan v. Commonwealth

(Decided April 20, 1937.)

KENNEDY & KENNEDY for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

In July, 1936, the appellant, Andrew Sloan, was driving a truck north on highway No. 27 in Lincoln county, Ky., and his truck collided with the truck which was being driven south on the same highway by John May, Jr., in which collision May was killed. The grand jury of Lincoln county returned an indictment against Sloan charging him with the crime of voluntary manslaughter in the killing of May. He was tried and found guilty of voluntary manslaughter and his punishment fixed at two years in the State Penitentiary. He appeals.

Two grounds are insisted on for a reversal of the judgment: (1) The evidence was not sufficient to support a verdict of voluntary manslaughter; and (2) the

instructions were erroneous. We will discuss these points in the order named.

Ground 1 is not seriously insisted on in brief of appellant. Counsel in his brief says: "As is usual in such cases, there are two sets of witnesses, one set unfavorable to the defendant, the other set favorable to him." He points out no particular evidence, but insists that the showing made by the Commonwealth amounted at most to no more than involuntary manslaughter and that the evidence taken as a whole did not justify a verdict finding Sloan guilty of voluntary manslaughter; that, at the most he should have been found guilty of no more than involuntary manslaughter.

There is some evidence tending to show that Sloan was or might have been intoxicated. After the collision a broken whisky bottle was found in Sloan's truck and a witness testified that he smelled whisky about the truck and it was wet in the cab. Another witness stated that he saw Sloan and two other young men who were with him drinking whisky before the accident occurred. Other witnesses testified to having seen Sloan driving along the highway a short distance before the point of the collision and that he was driving at a high rate of speed and zigzagging from one side of the highway to the other.

According to the undisputed evidence of the witnesses testifying from a map filed with the record indicating the point of collision and where the trucks stopped after the collision, May's truck, which was a one-half ton truck, was found several feet north of the point of collision and Sloan's truck, which was a one and one-half ton truck, stopped at a point 120 feet north of May's truck.

Corbet Reynolds testified that he was riding in May's truck and seated in the front seat with him. He said that he saw Sloan's truck coming around the curve while it was at a distance of about 150 feet and running at a speed of 45 or 50 miles an hour and that May's truck was on the right side of the road and when they saw Sloan's truck May pulled off the road to his right with the right wheels of his truck on the shoulders of the road, and May's truck was running at about 20 or 25 miles per hour. According to this evidence Sloan had the entire paved surface or the driveway of the

road except about three feet. Carmen Reynolds, who was riding in the back of May's truck, testified that he heard the noise of Sloan's truck "singing like an airplane" before it came in sight over a hill or rise in the road just south of the point where the collision occurred, and that it was running at a high rate of speed. He also testified that the right wheels of May's truck were on the shoulders of the road at the time it was struck by Sloan's truck, and that it pulled off the road some distance before the collision occurred. Razz Allen testified that he was sitting in his yard in front of his residence, which is located on the west side of the highway and on a knoll or small hill a short distance south of the point of the collision, and he heard Sloan's truck before it appeared in sight and the noise of the truck attracted his attention and immediately it appeared in sight and was running at a high rate of speed and said that he was "satisfied it was making 50 miles or better an hour"; when it passed his house he looked in the direction it was going and saw it collide with May's truck but he did not see May's truck before the collision. He immediately went to the scene of the collision and May's truck was in the ditch on the west side of the road which was May's right, and Sloan's truck 120 feet north of May's truck. He said he observed the tracks of Sloan's truck and the tracks indicated that it was just about the middle of the road or a little over the center to the left, and from an observation of Sloan's truck he estimated that the body of it extended 18 inches beyond the wheels. He said that he observed the tracks of May's truck and that they showed that it had pulled off the paved portion or driveway onto the shoulder of the road a considerable distance north of the point of the collision, and that the right wheels of the truck were on the shoulders of the road at the point of the collision. Jarrett Johnson testified that he lived within a close distance of the point of the accident and he heard the noise of Sloan's truck and it was making so much noise it attracted his attention. He went to the place of the accident soon after it occurred and made certain observations in respect to the location of the respective trucks. He said that the macadam or paved surface of the road was about 16 feet wide, and that May's truck had about three feet of the macadam, which would have left approximately 13 feet of the driveway for Sloan's truck. This witness also ob-

served the tracks of May's truck where it had left the driveway of the road and he stated that it commenced leaving the driveway 25 steps back from the point of the accident.

Sloan, testifying in his own behalf, denied that he was intoxicated or had drunk any intoxicating drinks on that day and denied the reckless driving described by the witnesses for the Commonwealth. He makes no definite description of the location of the respective trucks at the time of the collision. He said that May, the deceased, started around the curve and was holding the inside of the curve and he, Sloan, turned his truck to his right but the trucks collided. This is the only description he gives of the accident. Bruce Sloan, brother of appellant, testified that when they met May's truck on the curve May was holding the inside of the curve, which was Sloan's side of the road.

The evidence of other witnesses who testified for the defendant was favorable to him—tending to show that May's truck was at the left of the center or the wrong side of the road. However, as will be seen from the resume of the testimony of the witnesses for the Commonwealth, there is an abundance of evidence tending to show that Sloan was driving his truck at a high rate of speed and on his left of the road. Without detailing or discussing the evidence further, it is sufficient to say that we deem it sufficient to sustain the verdict of the jury. See King v. Com., 253 Ky. 775, 70 S. W. (2d) 667, and cases cited therein.

It is next insisted that the instructions were erroneous. It is argued that the court gave two instructions on voluntary manslaughter and none on involuntary manslaughter, although the court intended by instruction No. 2 to instruct the jury on involuntary manslaughter, but that the language used, except the penalty prescribed therein, amounted to a voluntary manslaughter instruction.

Instruction No. 1, in substance, told the jury that if it believed from the evidence beyond reasonable doubt that appellant drove his truck upon a public highway in a manner reasonably calculated to endanger the lives of other persons then and there driving upon such highway and he knew and had reasonable grounds so to believe and at said time and place and while so do-

ing, if he did so do, that defendant recklessly or wantonly ran said truck against the truck of the deceased and thereby inflicted upon deceased injuries from which he presently died, it would find him guilty of voluntary manslaughter and fix his punishment at confinement in the penitentiary for not less than two nor more than 21 years.

Instruction No. 2 reads as follows:

"Although you may not believe from the evidence beyond a reasonable doubt that the defendant, Andrew Sloan, recklessly or wantonly ran his truck against said truck of John May, Jr., as described in instruction No. 1, yet if you believe from the evidence beyond a reasonable doubt that at the time and place named in instruction No. 1 and within twelve months before the finding of this indictment, defendant with gross negligence and carelessness drove his truck against or into the truck that John May, Jr., was driving and thereby inflicted upon him the injuries from which he presently died or that at said time and place defendant drove his truck upon said highway at a rate of speed greater than was reasonable and proper having due regard for the traffic on such highway and so as to endanger the life or limb of any person using such highway, and that while so driving, if he did so, his truck by reason of such manner of driving on his part collided with the truck of John May, Jr., and thereby inflicted upon him injuries of which he presently died, then in either of such above events you should find defendant guilty of involuntary manslaughter and fix his punishment at a fine in any sum or at imprisonment in the county jail for any period of time, or both so fine and imprison."

Because of the use of the words "gross" negligence and carelessness, as used in instruction No. 2, it is insisted that this instruction defined voluntary manslaughter instead of involuntary manslaughter.

It must be conceded that the word "gross," as used in instruction No. 2, should have been omitted from that instruction, but we do not think the error was prejudicial. The penalty imposed is conclusive that the jury found defendant guilty under instruction

No. 1, which authorized it to find him guilty of voluntary manslaughter if it believed from the evidence beyond a reasonable doubt that he drove his truck on the highway in a manner reasonably calculated to endanger the lives of others using the highway and did so "recklessly or wantonly." If the jury had not believed that Sloan drove his truck in the manner described in instruction No. 1, "recklessly or wantonly" it had the alternative of finding him guilty under instruction No. 2, which was a misdemeanor, and evidently would have done so notwithstanding the word "gross" preceding the words "negligence" and "carelessness" as used in that instruction, although in technical legal terminology the use of the word "gross" amounted to practically the same as reckless or wanton. It is also the rule, subject to certain exceptions, that one cannot complain of an error in an instruction under which he was not convicted, and we do not think the present case is an exception to that rule. See Held v. Com., 183 Ky. 209, 208 S. W. 772. In the present case Sloan was not convicted under instruction No. 2, and there being no complaint that instruction No. 1 was erroneous (See Jones v. Com., 213 Ky. 356, 281 S. W. 164) and the evidence being sufficient to sustain a verdict under instruction No. 1, we do not think that the erroneous use of the word "gross" in instruction No. 2 was prejudicial.

Instruction No. 5 is also complained of. That instruction reads as follows:.

"As used in these instructions the words 'recklessly' and 'wantonly' mean with utter carelessness, having no regard for the consequences or for the safety of others, yet without malice. By 'gross negligence and carelessness' as used in these instructions means the failure to exercise a slight degree of care."

It is conceded that the words "recklessly" and "wantonly" as used in instruction No. 1 are correctly defined, but the objections are directed to the definition of the words "gross negligence and carelessness" as used in instruction No. 2. As we have already stated in our discussion of instruction No. 2, the word "gross" should have been omitted and the words "negligently" and "carelessly" only should have been used and those terms should have been defined to mean the failure to exercise ordinary care instead of a "slight degree of

248

care" as used in the definition given by the court. But having concluded that the error in instruction No. 2 was not prejudicial, it follows that the definition could not have been prejudicial.

Finding no prejudicial error, the judgment is affirmed.