## Couch v. Commonwealth.

Feb. 2, 1940.

544

Isaac Turner for appellant.

Hubert Meredith, Attorney General, and Guy H. Herman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Leslie County returned an indictment against the appellant, Stubins Couch, accusing him of willfully murdering Silas Bray by shooting him with a pistol. At his trial he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for ten years. His motion for a new trial was overruled, and from the verdict and judgment pronounced thereon he prosecutes this appeal.

In his motion for a new trial these alleged grounds were relied on: (1) Error in the rejecting of evidence offered by defendant, and in admitting evidence offered by the commonwealth; (2) that the verdict is not sustained by sufficient evidence, even to the extent of justifying the court in directing a verdict of acquittal; and (3) improper argument of counsel for the commonwealth. However, in brief of counsel another defect, which we, after extensive and painstaking investigation, have concluded was and is fatal to the prosecution, and so much so that it may not be waived by defendant not raising it in the trial court, or failing to rely on it in his motion and grounds for a new trial. That question is: That the indictment does not conclude as directed by our Constitution in its Section 123, saying: "Against the peace and dignity of the same." The word "same" in the excerpt, meaning "The Commonwealth of Kentucky." The defendant in the indictment took no steps whatever to test its invalidity because of its draftsman failing to conclude it as directed in the section of our Constitution, supra. No demurrer was filed to the indictment nor was any motion made to quash it. Neither was the defect therein relied on in the motion for a new trial. But, notwithstanding such failures, the law is undoubtedly well settled that the constitutional require-

ment may not be waived thereby and its omission—howsoever effectual it may be—may be taken advantage of at any stage of the prosecution, even by an appellate court in which the question is raised for the first time.

The only domestic cases wherein the question of the necessity of such a conclusion to an indictment was presented, that we have been able to find, are McCullough v. Commonwealth, Hardin 95, 102; Commonwealth v. Young, 7 B. Mon. 1; Commonwealth v. Kennedy, 15 B. Mon. 531, and Rawlings v. Commonwealth, 191 Ky. 401, 230 S. W. 529. But those cases do not expressly and explicitly determine the question as to the mandatory nature of the requirement of the Constitution concerning the concluding statement of all prosecutions by indictment. However, they practically hold that the requirement is mandatory, and that any indictment not containing the prescribed constitutional conclusion, or its substance, will be void and of no effect whatever, even to the extent of being entirely ineffective as the basis of a prosecution, howsoever conclusively the testimony may show the guilt of the accused. The text in 31 C. J. 613, Section 102, in discussing the question, says: "It is absolutely essential for every indictment, whether for a common law or statutory offense, except for mere nonfeasance, to allege by a formal conclusion, after charging the offense, that it was against the peace of the sovereignty as designated in the particular jurisdiction."

Many cases are cited in Note 8 to that text. However, in the next succeeding section, beginning on the same page, it is pointed out that in some states the Constitution does not prescribe for indictments to so conclude, and in some of which the requirement is only a statutory one, or one required by the common law and which has not been repealed. In states with no such constitutional requirement it is, of course, pointed out, in the latter section that it is competent for the legislature of the particular jurisdiction (in the absence of a constitutional provision) to dispense with the common law requirement, and to provide that an indictment may be validly returned and presented without containing such concluding language. Therefore, the learned counsel for the commonwealth in this case argue that our Criminal Code, as embodied in its Chapter II, Sections 118 to and including 137, while not expressly dispensing with the requirement of the common law as to conclud-

ing language of indictments, yet by necessary implication does do so.

However, if the interpretation of the Code sections, as made by learned counsel, should be approved by us, the fact still remains that the mandatory constitutional provisions may not be dispensed with by legislation, either in expressed terms or by necessary implication. In the second edition of Roberson's New Kentucky Criminal Law and Procedure, the learned author, in Section 1707, of his valuable work—in dealing with the question in hand—says: "It was the rule of the common law that 'every indictment must conclude against the peace of the king or queen in whose reign the offense was committed, except for mere nonfeasance at common law.' A similar requirement is embodied in our constitution which reads: 'All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Kentucky, and conclude against the peace and dignity of the same.' This provision is mandatory, and an indictment which does not conclude with these words, or words of similar import, is fatally defective."

The text in 14 R. C. L. 166, Section 15, supports, and is in complete accord with the excerpts, supra, from Corpus Juris, and the work of Mr. Roberson, and our investigation discloses that all writers on criminal law are in complete accord with those texts.

A casual view of the question suggests the thought that the requirement is only a formal one, and that its omission should not be given the effect of entirely vitiating the indictment, although in all other respects—in its substance and otherwise—it is in strict conformity with all approved essentials. But such formed impressions fail to take into consideration the determinative reason why such constitutional requirement should be observed and why its omission is fatal. The highest criminal appellate court in the State of Texas in the case of Cox v. State, 8 Tex. App. 254, 34 Am. Rep. 746, dealt directly with this phase of the question, and clearly and forcibly pointed out why the omission of such a constitutional requirement would be fatal, and all of which was done, as stated in the opinion, after long and extensive research of all authorities that could be found throughout the United States. It was insisted in that case (as it is in this one) that defendant waived the requirement by not relying on it until his appeal reached the appellate court, but in answering that contention

the Texas court—in following opinions in other jurisdictions which are cited in its opinion—determined that without the constitutional concluding language, the prosecuting paper, called an indictment, was no charge or accusation whatever. In the course of its opinion the court said:

"We confess the question has been one of no little embarrassment, and in our research we have spared no pains in hunting up and collecting all the authorities where the subject has been discussed and adjudicated in the courts of this country. The difficulty in obtaining the authorities, for some of which we have had to send outside the State, has occasioned the delay in the decision of the case. We believe that we have at length consulted every case in the United States wherein the question has ben reviewd, so far as the authorities were accessible. * * *

"However much we may feel disposed to consider a matter prescribed by the Constitution ill-advised or useless—however much we may be inclined to doubt the propriety of inserting into the organic, fundamental law of the State requisites of forms with regard to procedure and practice in the courts—the answer is, the people themselves, the source of all power and authority in a republican government, have spoken it; and with regard to their ipse dixit, when contained in the Constitution, which is but the expression of their sovereign will, the courts can only bow in humble obedience, and say 'ita est scripta.' "

Later on in the opinion in substantiation of the conclusions reached, it is said:

"In Rice v. State, 4 [3] Heisk. [Tenn.] 215, it was held that 'an indictment that does not conclude "against the peace and dignity of the State" is a nullity. It is a positive injunction of the Constitution itself that such shall be the conclusion of every indictment. It is therefore a matter that cannot be affected by legislation, and a defect that cannot be ignored by the courts. An indictment without these words is not an accusation of crime, and not an indictment in the sense of the Constitution. No conviction upon such an indictment could be permitted to stand, and a prisoner cannot waive his rights in this respect, as it is the imperative mandate of the Constitution that all crimes shall be prosecuted by presentment or indictment, and that all indictments

shall conclude "against the peace and dignity of the State." ' 'The conclusion "against the peace and dignity of the State" cannot be dispensed with.' 1 Green's Cr. Rep. 266. The same doctrine is emphatically declared in Thompson v. Commonwealth, 20 Grat. [Va.], 724, and Carney's Case [Com. v. Carney], 4 Grat. [Va.], 546.

"In Nichols v. State, 35 Wis. 308, the court say: 'The Constitution, Article 7, Section 7, provides that "all indictments shall conclude against the peace and dignity of the State." This formula is a mere rhetorical flourish, adding nothing to the substance of the indictment, and it is difficult to see why the mandate for its use was inserted in the Constitution. Yet it is there, and must be obeyed. We enforced obedience to it in Williams v. State, 27 Wis. 402. Of course the accused cannot be possibly prejudiced or in any manner misled by the omission of the formula from the indictment, and the use of it is held necessary for the sole reason that the Constitution ordains that it shall be used.' "

This opinion could be greatly lengthened were we to incorporate other cases from many other jurisdictions and other texts in strict accord with those which we have cited, but it is manifestly unnecessary to list them, since they are all to the same effect. It is, therefore, apparent that the indictment in this case was wholly insufficient, even to the extent of being entirely void, and when so it is the duty of the court, passing upon the validity of a trial thereunder, to take cognizance of the fatal defect at any and all stages of the proceeding, and to render its judgment accordingly.

We find no merit in any of the numerically listed grounds. The complained of error of the court in rejecting testimony offered by defendant cannot be considered by us, since no avowal as to what the witness would answer was made anywhere throughout the record, nor is any evidence introduced by the commonwealth complained of in brief. The testimony was amply sufficient to sustain the verdict of the jury, and it, therefore, cannot be said that the verdict is not sustained by the proof, much less did the court err in overruling defendant's motion for a directed acquittal. Improper argument of prosecuting counsel to the jury is attempted to be relied on, but it is unavailable for two reasons: first, the argument was not improper, and the second one is, that the court admonished the jury to be

governed alone by the testimony. In addition thereto defendant did not move for a discharge of the jury when the court failed to make the proper ruling, as he conceived, on his objections.

Argument is also made that the court committed error in the self-defense instruction submitted to the jury, because it did not permit defendant to shoot and kill the deceased if necessary to avoid danger at the hands of an alleged companion acting in concert with the deceased; but the trouble with that contention is, that all the testimony—including defendant himself—clearly showed that if there were a joint assault made on defendant by the deceased and another, the latter abandoned all of his activities of whatever nature considerably before defendant fired the fatal shot, and that at that time no one but the deceased was engaged in the affray in which the latter lost his life. There was, therefore, no testimony authorizing the court to embrace in its self-defense instruction the right of defendant to defend himself against actual or apparent danger emanating and threatened by any one except the deceased.

From what has been said it is apparent that the prosecution was and is free from reversible error, except for the fact that the indictment is fatally defective for the reason pointed out, and which was not waived by defendant failing to call attention of the trial court to it. Therefore, he may rely on it for the first time in this court.

Wherefore, for the sole reason pointed out, the judgment is reversed, with directions to set it aside, and for proceedings consistent herewith.

The whole court sitting.