## Couch v. Commonwealth.

Nov. 15, 1940.

S. M. Ward, Judge.

Isaac Turner for appellant.

Hubert Meredith, Attorney General, and Guy Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant charged with the murder of Silas Bray was convicted of voluntary manslaughter and sentenced to five years' imprisonment. The appeal now prosecuted is a second one, we having reversed on former appeal because of a defect appearing on the face of the indictment, which was cured upon resubmission. 281 Ky. 543, 136 S. W. (2d) 781.

In the former appeal the facts and circumstances are not stated, and, as we read appellant's brief, it does not now appear necessary to state the facts otherwise than in a general way, since the contentions made by the brief are purely technical, and it is not suggested that the proof did not authorize a submission to the jury, or that the verdict was inconsonant.

On August 13, 1939, a number of residents of a part of Leslie County were going by truck to a church meeting in Hyden. Among them were appellant and his wife, and Silas Bray, deceased. During the trip there was a sudden stoppage of the truck, causing Bray to step on Mrs. Couch's foot; she became slightly offended, the husband, however, showing indications of resentment, saying, referring to Bray, that he "would see him when they came to town." There were other remarks which, according to several witnesses, indicated a purpose on the part of appellant to take seriously the trivial incident.

After the party got to town the crowd separated, Couch remaining in front of the court house, Bray and others going to a restaurant, later returning to the court house; Bray undertook to apologize to appellant, but was rebuffed. There then arose a scuffling and fistcuffing in which several of the party engaged. The melee finally dissolved leaving appellant and Bray as the only combatants. It is apparent that those who were siding with Bray, sensing that there might be serious trouble, were endeavoring to avoid consequences.

The argument between appellant and Bray continued for a short while. Appellant finally drew his pistol shot and killed Bray, who at the time was displaying no weapon, though it developed that he had a .22 calibre pistol at his belt under his shirt. Appellant, admitting

he fired the shot which took Bray's life, contended that he fired in his defense, believing that Bray was about to take his life.

Counsel in brief does not intimate that there is any difference, material or otherwise, in the evidence introduced on each of the two trials. We mention this in connection with one point argued in brief, and that is to the effect that the court erred in giving instructions to the jury. If we correctly grasp this argument it relates primarily to instruction No. 4, incidentally to instructions 2 and 3.

Instruction 2 was the usual formal instruction on homicide, advising the jury as to its duty in case they believed beyond a reasonable doubt that appellant shot and killed Bray with malice aforethought, and its duty if it be determined that the shooting was in sudden affray, voluntary manslaughter. Instruction 3 told the jury, in the accepted and approved form and substance, should they find accused guilty, and have doubt as to whether the shooting was wilful, or such as to constitute the crime of voluntary manslaughter, they should give appellant the benefit of the doubt, and inflict the lesser provided penalty.

Counsel contends that instruction 3 was vague and indefinite to such an extent that a "jury of ordinary lay-,men" could not understand its meaning. Whether the jury did or did not comprehend the full meaning and import, it resulted in a finding of guilt only of the lesser offense, with the infliction of a penalty slightly in excess of the minimum provided by statute. We have no doubt but that the jury fully understood the meaning of the instruction. We have given consideration to the above criticism or contention, disregarding the fact that the objection was not set up as a ground in support of motion for new trial, but presented here for the first time.

It is also contended that the court erroneously failed to instruct the jury that appellant had the right, at the time of the shooting, to defend himself from impending danger from persons acting in concert with Bray. In answer we may say that counsel points to no material difference, as affecting this supposed right, in the testimony adduced on the former trial and the instant one. This being true, and as we review the evidence in the instant case, we are of the opinion that the

court was not authorized to give such an instruction. We so held in our former opinion.

It is complained that the jury which tried appellant was "packed" and a juror "concealed facts from the defendant;" that the jury was "qualified under the usual mode of questions, and that Walter Baker, a member of the jury, said that he was not of kin to the deceased." We fail to find in the record any basis for this assertion. However, after the commonwealth had closed, and several witnesses for the defendant had testified, apparently without any testimony developing the fact, counsel for appellant moved to set aside the swearing of the jury and continue the case, "because one of the jurors, Walter Baker, was married in 1911 to Sophia Bray, the aunt of deceased Silas Bray, and same is of record in the county court clerk's office."

The court queried the juror, who said that he had married Sophia Bray, aunt of Silas Bray, "twenty-eight years ago;" they lived together for eighteen months and were divorced, and he remarried. He said that the fact of the marriage would not cause him to have a "bit of feeling" in the case. The court then overruled the motion to discharge the jury.

We note that this alleged error was not incorporated in the grounds supporting motion for a new trial, but is raised here for the first time. Notwithstanding, we may dispose of the question. There is no sort of showing that counsel or appellant did not know of this record fact at the time the juror was examined on voir dire, at which time they should have challenged or excused him. There are many other valid reasons why this contention is without merit; we shall not undertake a recital, but refer to Reed v. Com., 273 Ky. 607, 117 S. W. (2d) 589, annotated in 116 A. L. R. 673, which will convince the reader that no error was committed in the court's failure to discharge the jury.

As to the contention of counsel that the court erred in admitting incompetent evidence, or rejecting competent evidence, we find that in brief there are set out seven or more instances in which it is claimed the court incorrectly ruled.

After carefully going over the transcript of the record, and noting the particular questions and answers

we fail to find either objection or avowal. Such being the case, we conclude, as we have so frequently ruled, that counsel by failing to object or avow, waived the right to raise the questions on review by this court.

As we read the record we fail to find any substantial or prejudicial error; hence under the provisions of Criminal Code of Practice, Section 340, we are not authorized to direct a reversal.

Judgment affirmed.