## White v. Commonwealth.

Dec. 11, 1942.

Troy D. Savage and Clement F. Kelly for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, R. J. White, 21 years of age, was convicted of carnally knowing Dorothy Gullett, a girl

fourteen and a half years of age, with her consent, and his punishment was fixed at confinement in the penitentiary for 7 years. To reverse the judgment he assigns four errors: 1. The instructions were erroneous; 2. incompetent evidence was introduced by the Commonwealth; 3. the court should have granted him a new trial because of newly discovered evidence; 4. the verdict is flagrantly against the evidence.

Early in the evening of September 2, 1941, Dorothy in company with Irene Green, a widow of about 30 years of age, went to the Golden Slipper, a roadhouse located near the corporate limits of Lexington. There they drank and danced until the place closed shortly before midnight. Rose White, the wife of appellant, worked at the Golden Slipper and on this particular night her husband was assisting her due to the fact she was suffering from a sore leg. The White residence is located approximately a block from this resort and as Dorothy and Irene were drunk at closing time and did not want to go home in that condition, they went home with Rose and her husband, although not previously acquainted with the Whites.

Soon after arriving at the White home, Irene went to sleep, or "passed out" as one witness described her, upon a divan in a hall which immediately adjoined the bed room where Dorothy and the Whites all got in the same bed. There was no door between the bed room and the hall—just an archway separating them—but Irene in her condition was oblivious to what took place in the bed room. Rose removed all of Dorothy's clothes but her slip. Dorothy got in one side of the bed but fell out three times and vomited in the bed. Dorothy testified the last time she was put in bed she was placed between appellant and his wife and that he had intercourse with her; that she resisted, called to his wife and grabbed her but she could not arouse Rose; that appellant slapped her, and also held his hand over her mouth. Immediately after the occurrence she left the house wearing nothing but her slip which was badly torn, went home and reported to her father what had happened, and he called the police.

Appellant and his wife gave quite a different version of what happened in the bed. Rose had been between her husband and Dorothy in bed until Dorothy fell out

the third time. Appellant then placed Dorothy in the middle and laid down on top of the covers to prevent her from again falling out of the bed. Dorothy became sick, vomited on him as well as the bed, and he became disgusted, went up stairs and slept on a pallet until the officers arrived. Both denied he had intercourse with Dorothy and both testified Rose had not been drinking and was wide awake as long as appellant was in the bed room. Rose testified that after he went upstairs Dorothy left the house, was gone about 15 minutes, came back, got in bed, groaned for a few minutes like she was sick, then jumped up and ran down the street like a maniac.

Rose and Irene testified that some half hour before the Golden Slipper closed Dorothy went to the ladies' rest room which was on the outside. Knowing that she was drunk, they went to see about her. As they approached the ladies' rest room a man left it, and they found Dorothy inside with her clothes disarranged and crying. Dorothy denied this.

Appellant complains that the court should not have instructed on forcible rape as denounced in Section 1154, Ky. Stats., which is a higher crime than carnally knowing knowing a girl under the age of consent as denounced in Section 1155, insisting that the indictment was drawn under the latter section. The indictment is inartificially worded but no demurrer was filed thereto, and it charged forcible rape under Section 1154 and not consent rape under Section 1155 when it alleged that appellant feloniously assaulted Dorothy and without her consent had sexual intercourse with her. But admitting arguendo that the indictment did not charge the higher offense, still appellant was not prejudiced by the instruction given under Section 1154 because the jury disregarded it and convicted him under the second instruction which was in conformity with Section 1155. Taber v. Com., 82 S. W. 443, 26 Ky. Law Rep. 754; Hendrickson v. Com., 81 S. W. 266, 26 Ky. Law Rep. 224; Brown v. Com., 122 Ky. 626, 92 S. W. 542; Ragsdale v. Com., 260 Ky. 645, 86 S. W. (2d) 532; Criminal Code of Practice, sec. 340.

It is insisted that the court should have instructed on the common law misdemeanor of attempted carnal knowledge of prosecutrix with her consent as was directed in Merriss v. Com., 287 Ky. 58, 151 S. W. (2d)

1030. In the Merriss case, there was some question as to whether prosecutrix had been penetrated, while in the instant case the evidence of Dorothy and that of the two physicians who examined her within a few hours after the alleged attack shows conclusively that she had been penetrated. She testified she was entered and the doctors testified they found her hymen broken and her vagina was torn and still bleeding which showed a recent entry had been made. The court did not err in refusing to instruct on the common law misdemeanor of attempting to have carnal knowledge of Dorothy with her consent.

There is no merit in the criticism that the second instruction under which appellant was convicted was confusing because it incorporated in one paragraph all the various degrees of the offense denounced by Section 1155 of which appellant might be convicted. As was said in Couch v. Com., 284 Ky. 445, 145 S. W. (2d) 49, 50, it could not be doubted that a "jury of ordinary laymen" understood its meaning. From the circumstances of Dorothy being drunk and getting in bed with appellant and his wife wearing nothing but a slip, the jury reasonably might have inferred that "she consented though all the while resisting." Nor was it error under the evidence adduced to instruct on the offense of detaining Dorothy against her will and on the offense of assault and battery, since appellant denied the act of intercourse. Boyd v. Com., 219 Ky. 62, 292 S. W. 478. Had it been erroneous to give such instructions, nevertheless appellant was not prejudiced since he was not convicted under either of them. Sloan v. Com., 268 Ky. 241, 104 S. W. (2d) 988.

On the day of his arrest appellant freely and voluntarily gave to G. W. Maupin, a police officer of Lexington, a statement of his version of the affair, but in advance told Maupin he would not sign the statement. After Maupin wrote the statement, appellant read it over and made no complaint as to its correctness. Objection is made because Maupin was allowed to read this unsigned statement to the jury. On the witness stand appellant did not contend he did not give the statement to Maupin or that it was incorrect, although he did point out a few minor discrepancies, and said he did not remember making certain unimportant statements contained therein; also, he testified his memory was bad.

The real objection to the reading of the statement was because it was unsigned. In Fuqua v. Com., 73 S. W. 782, 24 Ky. Law Rep. 2204, it was written that an unsigned dying declaration which had not been read to the deceased could not be read to the jury, but that the witness who wrote the declaration could testify as to its contents and use the paper to refresh his memory. The Fuqua opinion has been followed in Eastridge v. Com., 195 Ky. 126, 241 S. W. (2d) 806; Huff v. Com., 270 Ky. 36, 108 S. W. (2d) 1044, and in many other decisions. See, also, 70 C. J. sec. 749, p. 584 and Handley v. State, 214 Ala. 172, 106 So. 692. There can be no doubt that it was error to allow this unsigned statement to be read to the jury by Maupin, and it appears to have been prejudicial to appellant. There is a certain verity and conviction about a written statement which do not always accompany spoken words. Especially is this true where the witness is attempting to repeat a conversation with the defendant. A writing is usually made with more care and with greater attention paid to accuracy. No witness testifying as to what a defendant said to him is as impressive as the reading of a written statement made by the defendant, and the average jury is inclined to give more weight to such written statement than to the testimony of some witness narrating his version of what defendant said. Maupin may testify as to what appellant said to him but cannot read the unsigned statement made by appellant.

In this statement by appellant was an expression, "I wont say that I did have intercourse with either of these girls, Dorothy or Irene, and I won't say that I did not at this time." It is argued by appellant that under the authority of, 16 C. J. S., Criminal Law, Section 734, and Merriweather v. Com., 118 Ky. 870, 82 S. W. 592, 4 Ann. Cas. 1039, the silence of accused when charged with a crime cannot be used against him. The Commonwealth insists that appellant was not silent but spoke out and said he neither affirmed nor denied the charge, and as that statement was made voluntarily on his part it is admissible as any of the others made by him. Had appellant remained silent the effect of his action would have been neither to admit nor deny the charge, which silence could not have been used against him. When his only words on the subject were that he neither admitted nor denied the charge, it was equivalent to remaining

silent. We can see no distinction between one remaining silent when charged with a crime and answering, ''I neither admit nor deny the charge.'' In effect it is one and the same thing. Therefore, the court erred in admitting such statement as coming from appellant, since under the above authorities the silence of accused when charged with crime cannot be used against him.

The next complaint is that Maupin in testifying was allowed to repeat in full a conversation he had with prosecutrix soon after this matter was reported to the police and to use a written statement he took from her in refreshing his memory. Maupin had testified for the the Commonwealth and on cross-examination he was asked if in the statement he had taken from prosecutrix she did not say that she saw appellant and his wife engaged in sexual intercourse. Maupin's answer was in the affirmative. Upon re-direct examination the Commonwealth asked Maupin to read to the jury Dorothy's entire statement. The court correctly refused to allow this to be done, but erroneously permitted Maupin to relate to the jury all that prosecutrix told him had transpired in the White home. The Commonwealth argues that as appellant brought out from Maupin what prosecutrix had said concerning seeing White engaging in the act of intercourse with his wife, it had the right on re-direct examination to prove everything she said to Maupin about the occurrence in White's residence as related to Maupin by her when he took her written statement.

This question was asked Maupin for the purpose of contradicting Dorothy on the point whether she said White had intercourse with his wife or with her, and it cannot be said with reason that it opened the door to the Commonwealth to have Maupin repeat in toto Dorothy's statement. The re-direct examination should have related to the one subject of what Dorothy said as to with whom appellant had intercouse. 70 C. J. 706, Section 856; 7 Wigmore on Evidence, 523, Section 213.

The rule is that after one party puts in evidence a part of a conversation, the other is entitled on cross-examination, or on re-direct examination, to bring out all that was said on the occasion concerning the particular subject under inquiry. But this does not mean the entire conversation may be admitted in evidence, but only

so much as concerns the specific matter the opposite party opened up. Meadors v. Com., 281 Ky. 622, 136 S. W. 1066, 1067; Mott v. Detroit, etc., R. Co., 120 Mich. 127, 79 N. W. 3; Ballew v. United States, 160 U. S. 187, 16 S. Ct. 263, 40 L. Ed. 388.

The Commonwealth on re-direct examination properly could have asked Maupin if Dorothy made any statement relative to White having had intercourse with any other woman than his wife in his home that night. If he answer in the affirmative, then he could have been asked what Dorothy said to him on that occasion on that particular subject.

Appellant insists that the court erred in permitting the officers who arrested him to testify as to acts done and words spoken by his wife in resisting his arrest. As the evidence showed White was himself resisting arrest and advising and encouraging his wife to assist him in so doing, we think the court properly admitted this testimony. 22 C. J. S., Criminal Law, Section 628, p. 962; Roberson's Criminal Law and Procedure, 2d Ed., Section 825, p. 1938; Fallis v. Com., 197 Ky. 313, 247 S. W. 22.

From what we have said it is apparent that the verdict is not flagrantly against the evidence. The evidence is conflicting which makes the case peculiarly one for the jury. As so often has been written, we will not reverse a judgment as being flagrantly against the evidence merely because of conflicting evidence.

Since the judgment must be reversed, it is unnecessary to discuss the question of newly discovered evidence as appellant can produce such evidence upon another trial.

Judgment reversed.