## Joseph v. Commonwealth.

January 24, 1947.

G. E. Reams for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The appellant, Luther Joseph, prosecutes this appeal from a judgment of the Harlan Circuit Court wherein he was sentenced to 10 years in the penitentiary for voluntary manslaughter.

The melee involved three brothers, Johnnie, Luther, and Felix. It appears from the evidence that the appellant, about 9 or 9:30 on the night of January 12, 1946, came to the home of his brother, Johnnie Joseph. After a short visit with his brother, he invited Johnnie and his wife to accompany him home, which they did. Upon

arrival at the appellant's home, Luther began drinking. Sometime later, Luther suggested that they go back to Johnnie's house to hear the radio. Luther took with him a 22 special pistol and also a shot gun, which it is claimed was being loaned to Johnnie. Upon leaving Luther's house, according to the testimony of Johnnie, Luther began firing his pistol upon the highway and threw rocks at a neighbor's house. By the time they arrived at Johnnie's house it appears that Luther was very drunk. The appellant's wife testified that both Johnnie and Luther were so drunk they did not care what they did. However, Johnnie denies that he was drunk. The radio was turned on, and, according to the testimony of Johnnie and his wife, Luther became boisterous and tried to turn the radio over and threatened to shoot through it. He shot between the feet of Mrs. Johnnie Joseph and drew his pistol on Johnnie. Johnnie took the pistol away from Luther, and in the scuffle for it, Luther was shot through the finger. Appellant then took his shot gun and fired it through the back door. Johnnie succeeded in getting Luther out of the house and closed the door. The pistol belonged to James Shepherd, a brother-in-law of the Josephs. The appellant's wife asked Johnnie to let her have the pistol, stating she would return it to her brother-in-law. Johnnie gave her the pistol, which she immediately turned over to her husband. Luther and his wife then went to the home of Luther's mother for the purpose of having his hand dressed. While they were at the mother's home, Felix was in bed. After about 15 minutes, Luther and his wife returned to Johnnie's home for the purpose, they say, of getting the shot gun. Felix then got out of bed and followed them to Johnnie's home, possibly sensing some approaching trouble between Luther and Johnnie. According to Johnnie's testimony, after appellant had returned and had broken the window, he, Johnnie, opened the door and saw his brother, Felix, coming up the steps, and as he reached the top of the steps, the appellant shot him. He stated that he again took the pistol from Luther, who immediately ran away. He stated that Felix had no weapon and that he died before they could get him into the house and on the bed.

Mrs. Billie Dove, a neighbor, attracted by the disturbance in the home of Johnnie, stated that she arose

from her bed and looked out, and that she saw Luther going toward Johnnie's house with a pistol in his hand; that she saw Felix Joseph park his car at the foot of the steps; that a few moments thereafter she saw him go up the steps, and about the time he reached the head of the steps, she heard the firing; and a few minutes thereafter she identified the appellant, Luther Joseph, as running toward his home.

Vernon Coots testified that he saw Felix Joseph go up to his brother's house, and that as Felix reached the head of the steps some man wearing a white shirt shot him down. The testimony concerning the color of shirt worn by Luther is conflicting. However, the deputy sheriff who arrested Luther soon after the killing stated that he had on a white shirt with blue stripes. The proof unconflictingly shows that Johnnie had on a brown shirt with brown pants.

On a former trial, on substantially the same evidence as above, appellant was convicted and given 21 years in the penitentiary. Motion for new trial was granted, based upon newly discovered evidence. Upon the second trial, which is the one appealed from here, the appellant was given 10 years in the penitentiary.

This appeal is prosecuted upon two alleged grounds of error: (1) The failure of the court to peremptorily instruct the jury to acquit upon the grounds that the evidence for the Commonwealth was insufficient and the verdict was flagrantly against the evidence. (2) The court allowed the jury to separate upon agreement of the attorneys, which was made in the presence of the jury.

Under the foregoing testimony we are not impressed with appellant's contention under 1 above. The brother, Felix, was killed. Johnnie testified positively that Luther shot him. This evidence was in a measure corroborated by two other witnesses. The defendant stated he did not know who killed his brother, Felix. While there was some conflict, the evidence was abundantly sufficient to permit a submission to the jury and the court properly did this.

The appellant relies solely upon the case of Anderson v. Commonwealth, 302 Ky. 275, 194 S. W. 2d 530, 534, in support of the alleged error under contention 2. The

writer of this opinion also wrote the opinion in the Anderson case above, which appears to be the first pronouncement by this court upon that particular provision of the Criminal Code of Practice, sec. 244, subd. 2, as added by Acts 1940, c. 61, permitting juries to separate by agreement in trials of crimes which are, or may be, punished capitally or by life imprisonment. That case was a death case and the record discloses that in all the procedure there was not found in the record a single objection by counsel for the defense concerning a material matter.

We laid down the rule in the Anderson case as follows: "We think it improper for the court, in the presence of the jury, to put counsel in the position of having to agree or object to the separation of the jury." We yet think that rule to be sound. Our conclusion herein will in no way abandon that position. Anderson was given a death sentence. The appellant in the instant case was convicted of voluntary manslaughter, a crime during the trial of which, under the Criminal Code of Practice, a jury may be permitted to separate without the agreement of attorneys. It follows then that the appellant cannot now be heard to complain as prejudicial error a request for agreement for separation in the presence of the jury, when finally, as a matter of fact, the conviction was for a crime during the trial of which the court, without any agreement, could have permitted the separation. Much more does this appear to be true, in view of the fact that on a former trial appellant received 21 years, and in the instant trial only 10 years. We insist yet that it is improper for the court to make such request in the presence of the jury, and it appears to us there can be no plausible excuse why this should be done. It requires no especial effort or time to call the attorneys out of the hearing of the jury to discuss the matter of agreement as to separation. The court which requests the separation in the presence of a jury assumes the responsibility. While the impropriety upon the part of the court in making the request in the presence of the jury may not be determined as to its prejudicial effect until the historical finality of the case is reached, yet it is a risk run or a chance taken by the court. When we reach the conclusion of this instant case, we find a conviction of voluntary manslaughter, a

felony, during the trial, of which a separation could have been granted without agreement. Consequently, we hold there was no prejudicial error.

. The judgment is affirmed. .