## Burkhart v. Commonwealth.

March 24, 1950.

R. C. Tarter, Judge.

Luker & Tombs for appellant.

Russell Jones, E. B. Thompson, A. E. Funk, Attorney General, and H. D. Reed, Jr., Assistant Attorney General, for appellee.

JUDGE LATIMER—Affirming.

Appellant, Sherman Burkhart, upon his conviction for the crime of voluntary manslaughter and sentence to confinement for 5 years in the Penitentiary, prosecutes this appeal.

He urges as grounds for reversal: (1) The verdict is flagrantly against the evidence and the law. (2) Error in refusing peremptory instruction. (3) Error in admitting incompetent evidence. (4) Error in refusing to grant a new trial because of separation of jury. Grounds (1) and (2) will be considered together.

On the night of January 29, 1949, sometime about 9 or 9:30, Armond Mize was found dead on the bridge which crosses Roundstone Creek in the City of Livingston. His body was mangled and crushed; his skull was

bursted; and his legs were broken. About 10 minutes before he was found, he was seen to start across the bridge carrying a small radio under his arm. A truck driver, having observed the body as he passed by informed Ace Gothard and others of what he had seen. Gothard went immediately to the body. He then proceeded to find a deputy sheriff to report the matter to him. On his way to the deputy sheriff's home he noticed a truck parked across the highway from the place of business known as the Joyce Ann Cafe, which was only a few hundred feet from the bridge where the body was found. The deputy sheriff was not at home. On his return he stopped and examined the truck. This examinaiton disclosed that the truck had blood, brains and hair on the side of the bed. He then went on into Livingston and found Irvin Smith, a game warden, who returned with him to the truck. When they reached the truck they found the doors locked; the motor running; and the defendant lying over the steering wheel asleep. After awaking the defendant they placed him under arrest.

Upon the trial of the case, the Commonwealth established the facts substantially as above set out. It was shown, although there was some contradiction, that the defendant was drunk. Irvin Smith, who assisted in the arrest, stated that Burkhart was so drunk he couldn't walk by himself. Jerd York, Chief of Police at Livingston, stated that the accused was "bad drunk" and couldn't stand up without falling. Numerous other witnesses testified that appellant was drunk.

Defendant admitted that he had bought a half-pint of liquor at Bluegrass where he and another person drank it, but he had driven about 100 miles since. He denied that he was drunk.

It was well established that brains, blood, and hair were in evidence along the bed of the truck.

Appellant said it was somewhat foggy and that he didn't feel any impact and knew nothing about hitting anyone. He accounted for his dropping off to sleep at the wheel by saying that his motor had been overheating and he had fallen asleep while watching the thermometer dial.

It will thus be readily seen that the jury could easily have concluded that the death of this man was occa-

sioned by, and resulted from, appellant's intoxication and recklessness. We affirmed a conviction of voluntary manslaughter, under somewhat similar circumstances, in the case of Newcomb v. Commonwealth, 276 Ky. 362, 124 S. W. 2d 486. See also Dixon v. Commonwealth, 302 Ky. 353, 194 S. W. 2d 655; Sloan v. Commonwealth, 268 Ky. 241, 104 S. W. 2d 988; Largent v. Commonwealth, 265 Ky. 598, 97 S. W. 2d 548; Dublin v. Commonwealth, 260 Ky. 412, 86 S. W. 2d 136; King v. Commonwealth, 253 Ky. 775, 70 S. W. 2d 667.

Appellant complains next about the admission of incompetent evidence. The questions and answers complained of are:

"Q. 4. Were you convicted of a felony while you were in the Army? A. Court martialed one time.

"Q. 5. What for? A. Assault with attempted rape.

"*Re-Direct Examination.* Milton Luker:

"Q. 1. You were given an Honorable Discharge after that? A. Yes, sir.

"*Re-Cross Examination.* Russell Jones:

"Q. 1. What did they give you after that? (Objection by counsel for Defendant, said objection is sustained by the Court, to which ruling of the Court the Commonwealth by counsel objects and excepts.)"

In the first place, there is no indication that objection was made to the question or answer pertaining to the conviction of appellant, nor any exception taken to the ruling of the court, nor any motion made to exclude any of the testimony. However, at the conclusion of all the evidence, appellant moved the court to admonish the jury as to the purpose for which this testimony was to be received. The court then admonished the jury and appellant made no objection or exception. Even though incompetent, appellant is now in no position to complain in view of the above. It is unnecessary, then, to go further in our consideration as to whether or not the evidence was competent or incompetent.

Appellant lastly complains that his rights were substantially prejudiced in that the court allowed a separation of the jury. There are two incidents of alleged sep-

aration complained of. The first is where one of the jurors stepped apart from the other jurors to converse with his wife, all of which took place in the presence of a deputy sheriff and within the hearing of the counsel for defense. The second was where one of the jurors, under direction of the Judge, and in the company of a deputy sheriff, was permitted to go from the circuit court room, which is on the second floor of the courthouse, to the first floor thereof to present a claim for unemployment insurance.

It will be observed that under Section 244 of the Criminal Code of Practice, where on the trial of felonies other than those which may be punished capitally or by life imprisonment, before the case is submitted, the jurors may be permitted, in the discretion of the court, to separate. Thus, it will be seen that it was not obligatory to keep the jurors together throughout the trial.

In Stodghill v. Commonwealth, 305 Ky. 451, 204 S. W. 2d 570, 571, it was said: "Furthermore appellant was convicted of voluntary manslaughter, a crime, during the trial of which, under section 244 of the Criminal Code of Practice, a jury may be permitted to separate without the agreement of attorneys, and consequently no prejudice resulted." See also Joseph v. Commonwealth, 303 Ky. 712, 199 S. W. 2d 135; and Chaney v. Commonwealth, 149 Ky. 464, 149 S. W. 923.

The separation complained of here was not such a separation as contemplated within the meaning of Section 244 above. The counter-affidavits of Commonwealth show that no one talked to these separated jurors about the case during the period of separation.

In Burnam v. Commonwealth, 289 Ky. 312, 158 S. W. 2d 131, 132, where one of the jurors left the others to talk to his wife concerning a matter unrelated to the trial, it was said: "Sections 245 and 246 of the Criminal Code of Practice provide that when the jury is kept together in charge of an officer, no person shall be suffered to speak or communicate with the jury or any member thereof touching the subject of the trial. But it has never been held to be reversible error to allow someone to speak to a juror on a subject foreign to the trial in the presence and hearing of the officer or officers in charge of the jury." See also Lawson v. Commonwealth, 278 Ky. 1, 127 S. W. 2d 876.

560

Attention might also be called to the fact that appellant made no objection at the time of the separation of the jury, nor any motion to discharge the jury at the time the separation occurred. He should have moved seasonably. See McIntosh v. Commonwealth, 234 Ky. 192, 27 S. W. 2d 971; Caudill v. Commonwealth, 217 Ky. 403, 289 S. W. 371; and Belcher v. Commonwealth, 247 Ky. 831, 57 S. W. 2d 988.

The judgment is affirmed.